## The Pennsylvania Railroad Co. *versus* Barnett.

| 59 | 259 |
|----|-----|
| 158 | 86 |

| 59 | 259 |
|----|-----|
| 186 | 443 |

1. It is the duty of a railroad company as of a natural person, to exercise its rights with a considerate and prudent regard for the rights and safety of others.

2. It is not a justification that the act producing the injury was lawful or done in exercising a lawful right, if the injury arose from doing it negligently.

3. The engine of defendants having given no notice of its approach whistled under a bridge whilst a traveller was passing over it: his horses took fright, ran off and injured him. *Held,* that if danger might be reasonably apprehended, it was the duty of the company to give some warning.

| 59 | 259 |
|----|-----|
| 202 | 8513 |

| 59 | 259 |
|----|-----|
| d216 | 6176 |

| 59 | 259 |
|----|-----|
| 41SC | 8513 |

4. If it would have been negligence in the traveller to drive upon the bridge just as the train was about to pass under it, had he been aware of its approach, he was entitled to notice and it was the duty of the company to give it.

5. Negligence is always a question for the jury, when there is any doubt as to the facts or the inferences to be drawn from them.

6. If danger to the person or property of others at any point may be reasonably apprehended, or is likely to result from the running of trains without notice, it is the duty of the company to give notice.

7. It is a duty to give notice whenever danger may result to persons rightfully travelling on a public road that crosses a railroad, whether at grade or under or over the railroad, when danger would result from the want of notice.

8. Sounding the whistle under a bridge as a traveller was passing over, which caused the horses to run away through fright and injure him, was a sufficiently proximate cause of injury to create a liability on the company.

October 27th 1868.    Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Westmoreland county :* No. 78, to October and November Term 1867.

This was an action on the case by J. M. Barnett against The Pennsylvania Railroad Company for an injury occasioned by the negligence of the defendants' servants.

The public road leading from Derry to Latrobe in Westmoreland county, crosses the Pennsylvania Railroad on a bridge over the railroad, about two miles from Latrobe, the public road running north and south, and the railroad east and west. The bridge is wooden, 76 feet long and about 19 feet above the railroad track, there being a deep excavation at that place. On the 27th of July 1863, the plaintiff with his family had come from the north side of the road in a carriage with two horses, and was crossing the bridge when an engine drawing a passenger-train of the defendants from the east, as it was passing under the bridge, whistled ; the horses of the plaintiff took fright, ran off, the carriage was upset and broken to pieces and the plaintiff seriously injured. On the east side of the public road and north of the railroad is a hill which obstructs the view of the railroad for a distance of about 74 rods from the railroad until within about 6 rods of it ;

at the end of the 74 rods north of the bridge the railroad could be seen; it would take a passenger-train about a minute and a half to reach the bridge from the point at which it could thus be seen.

There was a whistling post 96 rods east of the bridge, at which there was evidence that it was usual to sound the alarm-whistle, and that the whistle was not sounded at the time of the accident. There was evidence also, by the son of the plaintiff who was with him in the carriage, that as the plaintiff approached the bridge he stopped two or three times to listen but did not hear the train coming; a number of witnesses testified that it would be unsafe for travellers on the public road, for trains to come to the bridge without sounding an alarm-whistle or giving some other signal. The defendants gave no evidence.

They submitted a number of points; those which were not affirmed, with their answers, were as follows:—

1. It was not such negligence on the part of the railroad company in not sounding the alarm-whistle in approaching the bridge, as set out in plaintiff's declaration, as will render them liable in this case.

Answer: "We cannot answer this point as requested. Whether the agents of the company, under all the circumstances of the case were guilty of negligence, is a question for the jury. In considering the question, the jury will consider the relative position of the county road and the railroad. The likelihood and facility of a traveller to discover approaching trains; and where that is difficult from the nature of the ground, the care to be observed by the company would be proportionately increased. If the jury believe a whistle could be heard by travellers on the township road, which road was a public road, much travelled, and that the railroad and trains could not be seen from a point at a safe distance from the bridge, it is for the jury to say whether it was not the duty of the engineer to give some notice of the approach of trains. We look upon this point as a matter of fact, in view of all the surroundings, and not of law."

2. In no case will the defendants be held liable in not sounding the alarm-whistle except at points on the road where injury might result to persons on the track at road crossings at grade, and stations.

Answer: "We cannot answer this point as requested. In our answer to the 5th point of defendants, we will give our reasons briefly. The point is therefore, as matter of law, answered in the negative."

5. From all the evidence in the cause, it is shown that the injury complained of by the plaintiff occurred by his horses taking fright on the bridge over the railroad, and was the result of the overturning of his carriage at a point some distance off the road, and the plaintiff cannot recover.

[Pennsylvania Railroad Co. *v.* Barnett.]

Answer: "This point contemplates the position that to make a railroad liable, it is necessary that the injury should be immediate by the machinery of the road. But if the act of the company or agent caused the fright of the horses, who ran off by reason of the train passing under the bridge, and in running off overturned the carriage and caused the injury, then we think it would be of like effect to charge the company as if the injury was immediate by the machinery of the road. We therefore answer this point in the negative."

6. A man having charge of a team, who is about to cross a railroad on which locomotives run, is bound to stop and listen and look in both directions, before he permits his team to cross, and an omission to do so is negligence on his part.

Answer: "This point, as an abstract proposition, is correct. Whether it applies to this case is for the jury, in view of the evidence as to what the plaintiff's acts and conduct were—what acts of care he observed, and whether, under the circumstances, it was sufficient."

The court (Buffington, P. J.) further charged :—

"The complaint in the case is that the agents of defendants gave no warning of the approach of their train to the place where the public road crossed on the bridge over the railroad; and that the passing of the train without any such warning, under the bridge, caused the horses of plaintiff to run off, which resulted in the injuries he received.

"Both parties had a lawful right to pass over the respective roads, the plaintiff over the public road, the defendants' cars over the railroad. Different duties, however, were imposed upon each. The plaintiff using a more manageable article, was bound to use all reasonable care to ascertain the probable approach of trains, by watching for them coming up and down the railroad, as he approached the bridge, and if the track was obstructed from his sight to stop and seek a position where he could see the track.

"On the other hand, the railroad company had their duties to perform: they were not bound, from the cumbrous and unmanageable character of their machinery, to stop their trains at every crossing of public roads; such frequent stoppages would greatly impair the efficiency of the railroad. But they were bound to do something to aid in the protecting of the safety and lives of travellers passing lawfully over public roads which the railroad crossed. [That duty so imposed on the railroad, consisted in giving warning of their approach, in order that travellers could stop in time to avoid danger.]

"These considerations seem to constitute the relative duties imposed upon each. * * *

"On the east of the public road, as it approaches the bridge

[Pennsylvania Railroad Co. *v.* Barnett.]

over the railroad, is rising ground which shuts out a view of the railroad on the east for the distance of some seventy perches along the county road. If you believe the plaintiff's little son, his father stopped the carriage some distance from the bridge, and looked for trains; again, a few rods from the bridge, he stopped and went forward to where he could see the railroad on the east, and seeing and hearing nothing on the track, he drove on to the bridge, and when on the bridge, the little boy says, they saw the train for the first time just under the bridge. The whistle was then blown, the horses frightened, ran off and the carriage was overturned and broken up, the family all thrown out and the serious injury complained of inflicted. * * *

"The train was running on a down grade, without much steam, but at great speed. What was it the duty of the train hands to do in approaching this road? The evidence is that the road was much travelled, and passed over a very deep cut of the railroad. Was it then their duty, under all the circumstances, to give notice by whistle or bell? There may be cases where a public road is so little used that warning would not be necessary; so also there are cases where the road is so public that the court would rule the necessity of warning of the approach of the train as matter of law. In the present case it is not so manifest which, so as to justify the court in deciding either way, and is therefore left to the jury.

"If you believe it was their duty to give such warning, then you will determine whether it was given or not, and the nature of it; and if sufficient to warn travellers on the public road, they would not be liable, though the warning, in fact, may not have been heard. We have said that it is not required of a train to check up or stop at the crossings of public roads, but they can without inconvenience or delay, give warning of their approach; and in cases where roads are much travelled, we think it is their duty. Whether this is a case of this kind, is for the jury. [A point has been made in this case, which if not entirely novel, has not been much discussed: that is, that the railroad company are not responsible for injuries to travellers on public roads, except where the railroad crosses the public road at grade. We are not of that opinion, but deem it as much the duty of the company to give notice, wherever danger may result to persons rightfully travelling on a public road that crosses the track, whether at grade or over or under the railroad, where danger would be the consequence of want of notice. How it was in this case, whether notice was necessary or not is for the jury."]

The verdict was for the plaintiff for $6000. The defendants took a writ of error, and assigned for error the denial of their points and the parts of the charge enclosed in brackets.

[Pennsylvania Railroad Co. *v.* Barnett.]·

*H. D. Foster*, for plaintiffs in error, cited 2 Hilliard on Torts; Cary *v.* Utica and Sch. Railroad, 23 Barb. 644; Moshier *v.* Same, 8 Id. 427; Bordentown *v.* Camden, 2 Id. 314.

*H. P. Laird*, for defendant in error. No paper-book on this side was received by the reporter.

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—This was an action brought by the plaintiff below to recover damages for an injury alleged to have been occasioned by the negligence of the Pennsylvania Railroad Company in not giving notice by an alarm-whistle or other signal of the approach of its passenger-train to the crossing where the accident occurred. The public road between Derry and Latrobe crosses the railroad, about two miles from the latter place, by a bridge 19 feet above the track, constructed of wood and built in the usual manner. The plaintiff was travelling along this road, and while driving over the bridge, the express passenger-train from Philadelphia going west passed under it, whistling as it passed, at which his horses took fright and ran away, overturning the carriage and throwing him out, in consequence of which he was seriously and permanently injured. A hill on the east side of the public road extending along it for the distance of about 74 rods, obstructs the view of the railroad, but it can be seen five or six rods from the bridge. As the plaintiff was approaching the crossing he stopped twice and listened for trains. About 100 rods east of the bridge there is a whistling-post, and it was usual for trains going west to sound an alarm-whistle as they passed, but at the time of the accident the whistle was not sounded until the train was passing under the bridge.

The first question presented by the assignments of error is, whether the court erred in refusing to charge that it was not such negligence on the part of the railroad company in not sounding the alarm whistle on approaching the bridge as will render it liable for the injuries which the plaintiff received. Generally what is and what is not negligence is a question for the jury. When the standard of duty is a shifting one, a jury must determine what it is, as well as find whether it has been complied with: Glassey *v.* Hestonville, &c., Passenger Railway Company, 7 P. F. Smith 174. The degree of care demanded of the company in running its train depended on circumstances, and whether it observed due care in approaching the bridge or was guilty of negligence in not sounding an alarm-whistle, was a question which properly belonged to the jury to determine. If there had been no evidence of negligence, or any facts or circumstances from which negligence could be fairly inferred, the court ought not to have submitted the ques-

[Pennsylvania Railroad Co. *v.* Barnett.]

tion to their determination. But it is as clearly the duty of a railroad company as it is of a natural person, to exercise its rights with a considerate and prudent regard for the rights and safety of others; and for injuries occasioned by negligence both are equally responsible. Nor is it any excuse or justification that the act occasioning the injury was in itself lawful or that it was done in the exercise of a lawful right, if the injury arose from the negligent manner in which it was done. If there was no danger to the persons and property of those who might be travelling along the public road in running its trains without giving any notice of their approach to the bridge, then the company is not chargeable with negligence in not giving it. But if danger might be reasonably apprehended, it was the duty of the company to give some notice or warning in order that it might be avoided. If it would have been negligence in the plaintiff to drive upon the bridge, just as the train was about to pass under it, had he been aware of its approach, then he was entitled to notice, and it was the duty of the company to give it. Whether, therefore, the company exercised proper care and diligence in running the train in order to prevent injury to the persons and property of those who were lawfully on the public road and in the vicinity of the crossing was a question for the jury. And the court properly charged that in determining whether under all the circumstances of the case, the company was guilty of negligence, the jury should consider the relative position of the county road and the railroad; the likelihood and facility of a traveller to discover approaching trains, and when that was difficult, the care to be observed by the company would be proportionably increased; that if the whistle could be heard by travellers on the township road, which was a public road, much travelled, and the railroad trains could not be seen from a point at a safe distance from the bridge, the jury would determine whether it was not the duty of the engineer to give some notice of the approach of the train; and that this was a matter of fact in view of all the surroundings and not of law. If under the evidence in the case the court had charged as matter of law, that the company was guilty of no negligence in not giving notice of the approach of the train, the instruction would have been clearly erroneous. Negligence is always a question for the jury when there is any doubt as to the facts or as to the inferences to be drawn from them: Johnson *v.* Bruner, not yet reported. Where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others, where both the duty and the extent of its performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved: McCully *v.* Clark and Thaw, 4 Wright 406.

The next question to be considered is whether the court erred

[Pennsylvania Railroad Co. *v.* Barnett.]

in declining to charge that in no case will the company be held liable in not sounding the alarm-whistle except at points on the road where injury might result to persons on the track at road-crossings *at grade* and stations.    The principles to which we have already adverted are equally applicable here.    Whether it is the duty of the company to give notice of the approach of its trains at any point on the road depends altogether upon circumstances. Where there is no reasonable apprehension of danger, no such notice is required.    But if danger to the persons or property of others may be reasonably apprehended or is likely to result from the running of its trains without giving such notice, then it is the duty of the company to give it, and its omission is negligence. The court therefore was clearly right in saying that it was the duty of the company to give notice, wherever danger may result to persons rightfully travelling on a public road that crosses the track, whether at grade, or over or under the railroad, where danger would be the consequence of want of notice.    And the evidence fully justified the court in submitting this question to the jury.    All the witnesses examined on the subject testified that it was dangerous crossing the bridge when trains were approaching, and it is a significant fact that the company did not call a single witness to rebut the evidence given by the plaintiff in this or in any other particular.    If, then, the crossing was dangerous, as all the witnesses agree, it was the duty of the company to give notice of the approach of its train.

The only remaining question to be considered is, whether the company is relieved from all responsibility for the injury because it was not the immediate consequence of its negligence.    The sounding of the alarm-whistle as the train was passing under the bridge was the cause of the horses becoming frightened and running away, and the injury to the plaintiff was the result.    This was an act of gross negligence, and a sufficiently proximate cause of the injury to render the company liable therefor.

The remaining assignments were not pressed, and there is nothing in them requiring special notice.    The case seems to have been tried with great fairness by the learned judge; and as we discover no error in his instructions to the jury the judgment must be affirmed.

Judgment affirmed.