LOUISVILLE & NASHVILLE RAILROAD COMPANY v. JOHN H.
SAWYER.

(*Nashville.*   December Term, 1904.)

**RAILROADS.** Warning of approach of trains at overhead cross-
ings when danger is to be reasonably apprehended.

Where a public road is crossed by a railroad on an overhead
bridge, no absolute duty rests upon the railroad company,
either at common law or by statute, to give reasonable warning
to travelers on the highway of the approach of a train by the
usual signals; but, if the place is dangerous, the company must
warn travelers on the highway of the approach of its trains;
and whether the place, as a matter of fact, is dangerous, is a
question for the determination of the jury; and in the event
the jury should find that danger was to be reasonably appre-
hended at the conjunction of the underpass and overhead
bridge, then, as a matter of law, it was the duty of the railroad
company to give warning of the approach of its trains.

Cases cited and approved: Railroad v. Barnett, 59 Pa., 259, 263;
Rupard v. Railroad, 88 Ky., 280; Railroad v. Dillon, 123 Ill.,
750; Pennsylvania Co. v. Krick, 47 Ind., 386; Winstanley v.
Railroad, 72 Wis., 375; Railroad v. Hamilton, 44 Ind., 76; Peo-
ple v. Railroad, 13 N. Y., 78.

Cases cited, distinguished, and disapproved: Favor v. Railroad,
114 Mass., 350; Ryan v. Railroad, 132 Pa., 304; Ransom v. Rail-
road, 62 Wis., 178; Jenson v. Railroad, 57 N. W., 359, 22 L. R.
A., 680; Farley v. Harris (Pa.), 40 Atl., 798.

FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County.
—J. A. CARTWRIGHT, Judge.

JOHN BELL KEEBLE, C. R. BERRY and HENDERSON & HENDERSON, for Railroad.

HEARN, MCCORKLE & LANE, for Sawyer.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The defendant in error, Sawyer, recovered a verdict and judgment against the company for the sum of $1,300 damages for personal injuries. The company appealed, and has assigned errors.

The gravamen of the action, as alleged in the declaration, is that Sawyer was driving in a buggy along a turnpike road, and, when about to pass under the overhead trestle of the company, a train of cars rapidly came upon the tracks, frightening plaintiff's horse, overturning the buggy, and throwing plaintiff to the ground, as the result of which he sustained serious personal injuries. The theory of the plaintiff below was that this was a dangerous crossing, and the company was guilty of negligence in not warning the public of an approaching train.

The declaration comprises five counts, but the substance of the complaint, as alleged in the first count, is:

"Said defendant, Louisville & Nashville Railroad Company, through and by its agents and servants, did carelessly, wantonly, negligently, and wrongfully, and without notice or warning to plaintiff, run, drive, and propel one of its said engines and trains of cars up to,

upon, over, and. across said overhead bridge, directly
over and above said line of pike road upon which plain-
tiff was traveling in the way and manner aforesaid, on
account of which careless, wanton, negligent and wrong-
ful act of defendant railroad company, the horse which
plaintiff was driving became frightened," etc.

There is no complaint, either in the declaration or
proof, that the horse was frightened in consequence of
any excessive or unusual whistling or ringing of the bell
or escaping of steam, which is usually the foundation of
such actions, as illustrated by the case of *Mitchell* v.
*Railroad,* 100 Tenn., 329, 45 S. W., 337, 40 L. R. A.,
426.

But it is conceded that the train approached this
overhead bridge under which the plaintiff was about to
pass almost noiselessly.

The complaint in this declaration is that it was the
legal duty of the railroad company to warn travelers
upon the highway about to pass under the railroad
track, of the approach of the train, and the failure of
the company to perform this duty was the proximate
cause of the accident.

There is proof tending to show that at the *locus in
quo* of the accident the Louisville & Nashville Railroad
crosses the Franklin & Nolensville Turnpike by means
of an overhead trestle, resting upon massive rock walls,
which project out on either side of the railroad, form-
ing a narrow and restricted passageway under the rail-
road. The view of the approaching train was to some

Railroad v. Sawyer.

extent obstructed by houses, walls, hedges, etc.; and, though plaintiff was looking and listening for any train that might be coming from either direction, he neither saw nor heard the approaching train until about to start under the overhead bridge, when this train, running at the rate of about forty miles an hour, suddenly appeared and passed over said trestle while plaintiff was passing under it, or just as he emerged from it on the eastern side. As a result thereof, plaintiff's horse became frightened, throwing plaintiff from the buggy to the ground, breaking his collar bone, and inflicting other serious personal injuries.

There is proof tending to show that, as a consequence of the fracture of plaintiff's collar bone, a knot or malformation had appeared on that part of his breast and shoulder where said collar bone was broken. According to the proof, the whistle was not sounded, nor the bell rung, as the train approached this overhead crossing. It is insisted that the company was under no obligation to ring the bell or sound the whistle at this point in obedience to the requirements of the statute, since the obstruction was not upon the track of the company, but beneath it.

The theory of the plaintiff is that the company was under a common-law duty to sound the whistle on approaching a public highway extending under the railroad trestle, and which crossing, by reason of the topography of the country and the surrounding environment,

was dangerous to the public traveling along the high-way.

On the other hand, it is insisted on behalf of the company there is no common-law obligation on a railroad company to sound signals at an underpass, and no liability for any injury resulting from the frightening of a horse by the lawful and reasonable operation of a train over an underpass. The company therefore assigns as error the following instruction of the trial judge on this subject, viz. :

"It was the duty of the defendant company to give plaintiff reasonable warning of the approach of its trains, by the usual signals, so as to put plaintiff upon his guard on his approaching or passing under the track. If you believe from the evidence in this case that the plaintiff, on approaching the overhead bridge, was in the exercise of due care and caution, as defined to you above, and while passing under the overhead bridge the defendant's train ran over the bridge, having given plaintiff no reasonable warning of the approach in the usual way, by ringing the bell or blowing the whistle, and if the noise of the sudden approaching train passing over the road scared the plaintiff's horse and caused him to run away, throwing the plaintiff out of his buggy, and if the negligence of the defendant, through its servants or agents, by failing to give such warning, was the proximate cause (that is, the direct and efficient cause) of his injuries, without which his injuries would not have occurred, then the defendant

Railroad v. Sawyer.

company is liable, and your verdict should be for the plaintiff."

It is conceded by counsel on both sides that the question thus presented by the charge of the trial judge is one of first impression in this State. It is conceded by counsel for the company that, under the authorities, if this were a grade crossing, the company would be onerated with some common-law duty to warn travelers of its approach, but it is contended that no such duty applies when the traveler is not compelled to pass over the railroad track, but beneath it.

As illustrating the position of counsel for the company, the case of *Favor* v. *Boston, etc., R. Co.,* 114 Mass., 350, 19 Am. Rep., 364, is cited, in which the court used this language, viz.:

"Where a railroad crosses a highway at grade, the law imposes upon it the duty of giving notice to travelers of the approach of its trains. This rule applies because at grade crossings the traveler on the highway and the railroad enjoy a common privilege on the highway itself, and each must use such privilege with due regard to the safety and rights of the other. And as a train of cars is a dangerous power when in motion, and capable of doing great injury, a high degree of care is demanded of the railroad in controlling it, and some notice of its approach to the highway is required both by the rules of the common law and by statute. But where a railroad crosses a highway by a bridge, it does not, in common with the traveler, have any privilege in

or use of the highway itself. Though the track and the highway are near and adjacent to each other, they are entirely distinct and separate. The railroad has no rights in the highway, and consequently the same duties are not imposed upon it that are imposed when it passes over the highway itself in common with the traveler. It has the right to use its roadbed and bridge as a railroad may use them—by running its trains at the common rate of speed, accompanied by the usual noises attendant upon such exercise of its rights. It is not bound by law to notify the traveler of its intention to use its bridge in the ordinary and usual manner."

In *Ryan et ux.* v. *Pa. R. Co.,* 132 Pa., 304, 19 Atl., 81, it appeared that plaintiffs were driving under defendant's railroad upon a public street, when a train crossing overhead frightened their horse so that it became unmanageable and ran away, inflicting serious personal injuries, and resulting in the death of one of the children. The court said:

"The defendant company was operating its road in a lawful manner. No defect was shown in the construction of the road. On the contrary, it was the work of competent engineers, approved by the chief engineer and surveyor of the city, and in pursuance of an ordinance of councils expressly authorizing it. The sight and sound of a moving train always have a tendency to frighten horses. In this case the fright was occasioned by sound. We cannot measure, nor can a jury be properly allowed to measure, the amount of sound which

Railroad v. Sawyer.

may be made by a railroad train, either in crossing bridges at overhead crossings or at other places. The defendant company has, under all the authorities, the right to operate its road in a lawful manner; and, when it does so without negligence and without malice, is not responsible for injuries occasioned thereby."

In *Ransom* v. *Chicago Railway*, 62 Wis., 178, 22 N. W., 147, 51 Am. Rep., 718, liability was adjudged against the company for breach of a statute of that State requiring certain precautions to be observed by railroad companies before crossing any highway; causing a horse to run away near a crossing, and inflicting personal injuries on plaintiff's wife. The court said:

"There is no statute, and we are aware of no common-law rule, which, under such circumstances, requires railroad companies to observe these precautions to avoid accident. If, therefore, the defendant is liable in this action, it is so because it failed to comply with the requirements of the statute prescribing its duty when its train approached the crossing of the highway."

In *Jenson* v. *Chicago, etc., Railroad Company*, 57 N. W., 359, 22 L. R. A., 680, the court said as follows:

"It is certainly no wrong for the train to be run over such bridges in the usual and ordinary way, and even in this way some horses going under the bridge, or being near it at the same time, might be frightened by it. The trains must necessarily make considerable noise going over the bridge. They cannot be run without it. It is not by any means certain that a train would make

less noise going over slowly than faster. What degree of noise must it make, to frighten horses? . . . As to ringing the bell and blowing the whistle, they are only required, if at all in order to avoid frightening horses, and, with that view, to warn the traveler on the highway to stop. Where should he stop, and how near the bridge? If near the bridge, and his horse is liable to be frightened and run away, he will be in a much more dangerous condition than if he should drive on and take his chances, for the horse, facing the train rushing over the bridge, would turn suddenly around to escape danger, and upset the carriage."

The cases just mentioned comprise all those cited by counsel for the company in support of their contention that the charge of the circuit judge was erroneous. The authorities holding the contrary doctrine will now be considered. Rapalje & Mack, in their Digest of Railway Law, volume 3, section 92, state the law thus:

"Independently of the statute, it is the duty of those in charge of a train to give notice of their approach at all points of known or reasonably apprehended danger." Citing *Chicago & A. R. Co.* v. *Dillon,* 123 Ill., 750, 15 N. E., 181, 5 Am. St. Rep., 559; *Pa. Co.* v. *Krick,* 47 Ind., 386; *Winstanley* v. *Chicago, M. & St. P. R. Co.,* 72 Wis., 375, 39 N. W., 856.

"The absence of a statute requiring the ringing of a bell or the sounding of a whistle in approaching highway crossings will not excuse the company for a failure to do so under all circumstances. Where a view of ap-

proaching trains is obstructed, or it is impossible or very difficult to hear them, and in similar cases, it is clearly the duty of the company to give such signals, although not required by the statute." Citing authorities.

"Whether in a given case, ordinary care requires the giving of such signals, is a question for the jury." Citing *Indianapolis R. Co.* v. *Hamilton*, 44 Ind., 76.

Again, the same author, at section 97, volume 3, says:

"Where the view of an approaching train is obstructed, though the company is not required by the statute to sound a whistle or ring a bell when its train approaches a highway, yet, where such appliances are available, the failure to use them is negligence." Citing cases.

"Where an approaching engine is concealed from the view of persons approaching a highway crossing at a place of much travel, regardless of the statute, the duty of the company to operate its train at a moderate rate of speed, and to give the usual signals of its approach, is more imperative than at a place of less danger." Citing authorities.

Again, the same author, at section 154, volume 3, says:

"The provision of the New York act of 1850, section 39 (page 232, c. 140), prescribing a penalty for running a locomotive past highway crossings without giving signals, applies to a crossing where the track is carried

over the highway on a bridge." Citing *People* v. *N. Y. Central R. Co.,* 13 N. Y., 78, affirming 25 Barb., 199.

"It is as much the duty of a company to give notice of the approach of trains where highways pass under or over the track as where they cross at grade, if danger is likely to result to persons or property from a failure to do so." Citing *Pennsylvania R. Co.* v. *Barnett,* 59 Pa., 259, 98 Am. Dec., 346.

This latter case seems to be the leading authority relied on by counsel for the plaintiff below, and we shall therefore proceed to notice it *in extenso.*

The facts of that case are that the public road crossed the railroad by a bridge nineteen feet above the track. The plaintiff was traveling along this road, and while driving over the bridge an express passenger train passed under it, whistling as it passed, at which his horse took fright and ran away, overturning the carriage and throwing plaintiff out, in consequence of which he was seriously and permanently injured. It appeared that a mill on the east side of the public road obstructed the view of the railroad to some extent. About one hundred rods east of the bridge there was a whistling post, and it was usual for trains going west to sound an alarm whistle as they passed, but at the time of the accident the whistle was not sounded until the train was passing under the bridge. The court, in the midst of its opinion, said:

"The degree of care demanded of the company in running its train depended on circumstances, and

Railroad v. Sawyer.

whether it observed due care in approaching the bridge, or was guilty of negligence in not sounding an alarm whistle, was a question which properly belonged to the jury to determine. . . . If there was no danger to the persons and property of those who might be traveling along the public road in running its trains without giving any notice of their approach to the bridge, then the company is not chargeable with negligence in not giving it. But if danger might be reasonably apprehended, it was the duty of the company to give some notice or warning in order that it might be avoided. . . . Whether, therefore, the company exercised proper care and diligence in running the train in order to prevent injury to the persons and property of those who were lawfully on the public road and in the vicinity of the crossing, was a question for the jury."

It was further insisted in that case that the company would not be liable for failing to sound the alarm whistle except at points on the road where injury might result to persons on the track at road crossings at grade and stations. The court held that whether it is the duty of the company to give notice of the approach of its trains at any point on the road depends altogether upon circumstances. Where there is no reasonable apprehension of danger, no such notice is required. But if danger to the person or property of others may be reasonably apprehended or is likely to result from the running of its trains without giving such notice, then it is the duty of the company to give it, and its omission

is negligence. The court approved the charge of the
circuit judge in saying that it was the duty of the com-
pany to give notice wherever danger may result to per-
sons rightfully traveling on a public road that crosses
the track, whether at grade, or over or under the rail-
road, where danger would be the consequence of want
of notice.

It will be observed that the substance of this opinion
is that, whether or not it was negligence on the part of
the company to fail to warn travelers of the approach
of the train to a public crossing, was a question for the
determination of the jury, in view of all the surround-
ing circumstances, and it was immaterial whether the
railroad crossed the public road at a grade, or over or
under the public road.

Another case very much relied on by counsel for
plaintiff below is *Rupard* v. *Ches. & O. R. Co.*, decided
in 1889 by the court of appeals of the State of Ken-
tucky, and reported in 88 Ky., 280, 11 S. W., 70, and in
7 L. R. A., 316. In that case it appeared that the wife
of plaintiff, while riding horseback on the public road
at a point where the railroad crosses said road on a high
trestle, was thrown from her horse in consequence of his
fright from the noise of the train as it passed over the
trestle. The ground of liability asserted in that case
was the failure of the company to give notice of the ap-
proach of the train to the crossing. The court, in con-
sidering the liability of the company, repudiated the
doctrine laid down in *Favor* v. *Boston R. Co.*, supra, in

which a distinction was drawn between the duty of the company to warn travelers of the approach of a train to an overhead bridge or to a grade crossing. In the Kentucky case the court held that it is the duty of a railroad company, where a train crosses a public highway on a trestle, and there is danger of catching a traveler thereunder unawares, and frightening the horse that he is riding or driving, to give some timely warning of the approach of the train to the crossing. The court, in its opinion, while disagreeing with the conclusions reached by the court in *Favor* v. *Boston R. Co.*, supra, approved the principles enunciated in *Pa. R. Co.* v. *Barnett,* 59 Pa., 263, 98 Am. Dec., 346.

It was further held in that case that the question of negligence in failing to give notice should be left to the determination of the jury. Counsel for plaintiff in error cites the case of *Farley* v. *Harris,* reported in 40 Atl., 798, and decided by the supreme court of Pennsylvania in 1898, which case it is claimed, is a modification of the rule laid down in *Railroad* v. *Barnett,* 59 Pa., 259, 98 Am. Dec., 346. In that case it appeared that the plaintiff was crossing an overhead bridge, when his horse became frightened, ran away, and injured the plaintiff. The grounds of recovery alleged in that case were two: (1) That the whistle had been negligently sounded when the locomotive was immediately under the bridge; and (2) that no whistle had been sounded by the locomotive on approaching this overhead bridge.

114 Tenn—7

The court said that the rule applicable to grade cross-. ings—that it is negligence in railroad companies not to give warning on approaching them—has no application to under and over crossings at every street crossing in a city. The court, in concluding its opinion, says that the cases cited by the appellant (*Railroad Company* v. *Barnett,* 59 Pa., 259, 98 Am. Dec., 346, and other cases) are all applicable to a different state of facts than are presented here.

A careful examination of *Farley* v. *Harris,* supra, will show that the gravamen of the action was the blowing of the whistle when Farley was on the bridge, and the locomotive was directly beneath it. The proof was that the fright of the horses was caused solely by the blasts of the whistle when Farley was in the middle of the bridge. It is true that in the midst of the opinion the court said that the rule applicable to grade crossings has no application to under and over crossings at every street crossing in a city. "In fact," continued the court, "such crossings are constructed on the theory that, by adopting them, travel is unobstructed, and danger to travelers on parallel and cross streets is lessened by the absence of the screams of steam whistles necessary to give warning at grade crossings." The court then said that *Railroad* v. *Barnett,* 59 Pa., 259, 98 Am. Dec., 346, and other cases cited, are all applicable to a different state of facts, and concludes by saying: "Our decision is based solely on the circumstance of an accident at a properly constructed overhead bridge at one

Railroad v. Sawyer.

of the many street crossings of a steam railroad in a city." After an examination of all the authorities cited, we think the true rule deducible therefrom is that, if the place is dangerous, then the company is onerated with the duty of warning travelers on the highway of the approach of its trains, but whether the place, as a matter of fact, is dangerous, is a question for the determination of the jury. The law imposed no absolute duty upon the company to give notice at this particular crossing. That duty was only required, as matter of law, in the event the jury should find that danger was to be reasonably apprehended at this conjunction of underpass and overhead bridge. The charge of the trial judge in this case made the duty of the company absolute to give warning of the approach of the train to the crossing. Said the court: "It was the duty of the defendant company to give plaintiff reasonable warning of the approach of the train by the usual signals, so as to put plaintiff upon his guard on his approaching or passing under the track." There was no such absolute duty resting upon the company either at common law or by statute, but its duty in this respect was entirely dependent upon the question of fact whether the place was dangerous. The charge of the court should have been so formulated as to leave to the determination of the jury the dangerous character of the place, as the predicate for the application of the principle of law announced. For the error indicated, the judgment is reversed and the cause remanded.