# Vansant, Appellant, *v.* McMenamy.

*Negligence—Steam engine—Escape of steam—Fright of horse—Question for jury.*

1. In action to recover damages for personal injuries caused by the fright of a horse, the case is for the jury where it appears that the defendant used on a highway a steam machine for pumping water from a creek into a water wagon; that the engine was equipped with a safety valve which worked automatically at a pressure of 100 pounds, at which pressure steam escaped with a sharp, shrill noise; that the man in charge of the engine had it in his power to reduce the pressure or give timely warning of danger, but that neglecting to do so he permitted a violent explosion of steam without warning the plaintiff, thus causing the fright of plaintiff's horse.

2. In such a case it is not an excuse that the work in which the defendant was engaged was in itself lawful, or that it was done in the exercise of a right, if the injury resulted from the negligent manner in which the work was performed.

3. Where the duty of care is not fixed but varies with the circumstances the case is for the jury, and where inferences may arise from facts proved or admitted where there is no established standard of judgment it is the province of the jury to draw such inferences.

Argued Oct. 7, 1909. Appeal, No. 72, Oct. T., 1909, by plaintiffs, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1906, No. 3,358, for defendant non obstante veredicto in case of James M. Vansant and Addie K., his wife, v. John McMenamy. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

In addition to the facts stated in the opinion of the Superior Court it appeared that the defendant at the time of the accident was constructing a public road in the course of which work he used a stationary upright steam boiler and pump to pump water from a neighboring creek into a water wagon. The boiler had been placed on the side of the road. The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict for James M. Vansant for $200, and for Addie K. Vansant for $300.

The court subsequently entered judgment for defendant non obstante veredicto.   Plaintiffs appealed.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Henry Budd*, with him *Franklin Gilkeson* and *Howard I. James*, for appellants.—A man doing a legitimate piece of work, in a place where he has a right to be, must perform that work with due regard to the protection of the rights of others, and it is for the jury to say whether, under all the circumstances, such regard has been had: Menner v. D. & H. Canal Co., 7 Pa. Superior Ct. 135; Fisher v. Ruch, 12 Pa. Superior Ct. 240; Louisville, etc., Ry. Co. v. Schmidt, 147 Ind. 638 (46 N. E. Repr. 344); Knight v. Goodyear's India Rubber Glove Mfg. Co., 38 Conn. 438; Weller v. R. R. Co., 225 Pa. 110.

*Andrew C. Wylie*, for appellee, cited: Duvall v. R. R. Co., 73 Md. 516 (21 Atl. Repr. 496); Macomber v. Nichols, 34 Mich. 212; Drayton v. R. R. Co., 10 W. N. C. 55; Joyce v. Penna. R. R. Co., 5. Pa. C. C. Rep. 392; Fouhy v. Penna. R. R. Co., 17 W. N. C. 177.

OPINION BY HENDERSON, J., March 3, 1910:

The verdict of the jury acquitted the plaintiff of contributory negligence and charged the defendant with liability for the injury complained of.   The only question for our consideration is the sufficiency of the evidence to establish the defendant's negligence.   Did the defendant owe any duty to travelers driving horses along the highway to safeguard them against accidents resulting from the fright of their horses excited by steam escaping from the boiler?   Conceding that the defendant had a right to place his machinery in the public highway while engaged in the work under his charge, was his duty performed if he provided a boiler of a usual type which was equipped with a suitable steam gauge and

safety valve?  The boiler was located within a few feet of the place where the plaintiff came onto the highway through the lane leading down from her home, and was on the roadside eight or ten feet from the vehicle tracks.  The safety valve operated automatically at a pressure of 100 pounds, and when that pressure was reached steam escaped through the open valve with a sharp, shrill noise.  The boiler supplied steam for an engine used in pumping water from a nearby creek into a water wagon used in sprinkling the road.  One of the defendant's servants had charge of the boiler and was familiar with its management.  The propriety of the use of a safety valve cannot be questioned, but we think the plaintiff's case is not answered by showing that it is a usual and necessary device on steam boilers.  If it were not only indispensable but beyond control of the person in charge of the machinery and there were no means of knowing when there was a liability to the escape of steam from the valve and the consequent danger to a passing traveler, the defendant's argument would be convincing, but the evidence of the defendant's own witnesses discloses the fact that the steam pressure could be controlled not only by the amount of fire, but by opening and closing the fire door and that it was usual for the person in charge to open the door to lower the pressure; and it appeared that immediately before the occurrence of the accident one of the defendant's employees seeing Mrs. Vansant driving down the lane to the road called out to the fireman that she was approaching and that he should open the fire box door to prevent the escape of steam through the safety valve.  This action apparently was not taken in time, for when Mrs. Vansant was opposite the boiler there was a violent discharge of steam which frightened her horse and thereby caused the injury shown to have been received.  It is a familiar rule that negligence is the absence of care under the circumstances, and that where the duty of care is not fixed but varies with the circumstances the case is for the jury, and where inferences may arise from facts proved or admitted where there is no established standard of judgment it is the province of the jury to draw such inferences.

Many acts lawful in themselves and of an ordinary character may become actionable because of the circumstances attending their performance. The care to be exercised in the conducting of a particular operation is to be regulated by the circumstances and conditions. The defendant knew that the boiler was located on one of the most frequently used highways in the county, and that an escape of steam would occur when the pressure exceeded 100 pounds. He was also chargeable with knowledge that a horse passing within a few feet of the boiler was likely to be frightened by the sudden explosion of the safety valve. It was, therefore, his duty to adopt such precautions, if any were practicable, as would prevent the escape of steam when travelers were passing by or to warn them of the imminence of such an occurrence, thereby affording them an opportunity to avoid the danger. There was nothing in the appearance of the machinery to enable anyone traveling the road to observe the lurking peril or to give notice that an explosion was about to occur. But the man in charge had such knowledge and it was apparently within his power to reduce the pressure or to give timely warning of the danger. Public highways are primarily for the use of travelers, and where they are subjected to an exceptional use the right thus to do must be exercised so as not to injure others lawfully on the road. The legislation regulating the use of traction engines and motor vehicles expresses the public judgment on that subject. The use of self-propelling machines is permitted, but subject to the restriction that the safety of other travelers be regarded. The Act of June 30, 1885, P. L. 251, makes it the duty of any person in charge of a machine propelled by steam on any public road not only to stop his machine on the roadside when any traveler with a horse or horses shall have arrived within 300 feet of the machine, but also to assist such passing team until it is safely by the danger. And the Act of April 27, 1909, P. L. 265, requires the operator of any motor vehicle on a public highway when signaled so to do by the driver of any horse or horses to stop his machine and if circumstances demand it to stop his engine also until the danger has been

avoided. It is true, the defendant was not using a machine of either of the classes described in these statutes, but he should be held to a like degree of care when using a steam machine on the highway which was likely under certain conditions to frighten teams. The safety of travelers is the object aimed at and this can only be secured by the exercise of due care. It is not an excuse that the work in which the defendant was engaged was in itself lawful or that it was done in the exercise of a right if the injury resulted from the negligent manner in which it was performed. The cases on which the defendant relies grew out of the use of locomotives on railroads and in each is involved the principle that such a company using its locomotives in the usual and ordinary way is not responsible for the consequences of the noises caused by the ringing of the bell or the escape of steam through the whistle or safety valve. The bell and whistle are well-known means of warning and are intended to attract the attention and alarm persons and animals liable to be in the way of the engine. They are essential to the secure operation of the road and are used on the right of way of the company. The mere fact of the noise is not sufficient, therefore, to charge the company with negligence. There may be cases, however, as was shown in Penna. R. R. Co. v. Barnett, 59 Pa. 259, where even in the use of a locomotive whistle the company may inflict an injury for which it will be liable. In that case the whistle was blown under a bridge over which the plaintiff was passing with his team as a result of which his horses took fright and ran away, injuring him seriously. The sounding of the alarm whistle as the train was passing under the bridge was held to be the cause of the injury and an act of gross negligence. To the same effect is Indianapolis Union Ry. Co. v. Boettcher, 131 Ind. 82, in which it was held that the negligent or careless sounding of a whistle at a public crossing causing a horse to take fright is an actionable wrong. In the case of Duvall v. B. & O. R. R., 73 Md. 516, cited in support of the judgment, the plaintiff's horse was frightened by an escape of steam from an automatic valve, but in that case there was an engine to which were attached twenty-eight freight cars

going up a high grade and requiring a full pressure of steam. The train had reached the station and was waiting to move at a moment's notice. To have slackened the fire would have been to deprive the engine of the steam absolutely necessary to its movement, and in such a case the escaping steam was considered a noise necessarily incident to the movement and operation of the engine. The case of Louisville, etc., Ry. Co. v. Schmidt, 134 Ind. 16, involved principally the right of a railroad company to make noises usual in operating locomotives and necessarily incident thereto, and the decision turned on the proposition that there was no evidence that the noises complained of could be practically avoided. The case was therefore reversed and on a second trial after a change of the pleadings charging a failure of the company to use the means within its power to avoid the injury a verdict for the plaintiff was sustained. And that was done on evidence that while the steam escaped automatically from the locomotive when it had reached a certain pressure, still the fire which produced the steam was under the control of the engineer and fireman and the jury was permitted to find that the increase of the steam could have been prevented by regulating the fire or by opening the door of the furnace or by closing the dampers. In Drayton v. North Penna. R. R. Co., 10 W. N. C. 55, the plaintiff was driving along the public highway on the brow of a hill and the defendant's locomotive was on the track twelve or fifteen feet below the public highway. The report of the case shows that "A slight noise of escaping steam" frightened the horse. There was nothing to show that the locomotive was in a place where the defendant had no right to have it, nor was there anything unusual in the escape of the steam. The company was therefore only in the ordinary and legitimate use of its own property. Upon similar reasoning, Fouhy v. Penna. R. R. Co., 17 W. N. C. 177, was decided. There a bell was rung while a train was passing along the track on Trenton avenue in the city of Philadelphia in a thickly built up portion of the city. A horse was frightened, as was claimed, by the ringing of the bell. In disposing of the case it was said the omission to ring the bell might have been evidence of

negligence considering the locality in which the train was moving. The distinction was made in Knight v. Goodyear's India Rubber Glove Mfg. Co., 38 Conn. 438, between the use of a whistle on a locomotive and on a factory. In the former case it was justified because of the necessity of giving warning and exciting fright. But in the case of its use on a manufactory it was held that it must be so used as not to endanger others.

We are unable to agree with the conclusion of the learned court below that the defendant might subject the traveling public on the highway in question to danger from fright of their horses caused by the explosions from the boiler used by him without liability for the consequences. In our judgment it was for the jury to say whether under all the circumstances the defendant exercised that care which he ought to have exercised and the jury having found against him on the question as clearly and fairly presented by the trial judge, the verdict ought to stand.

The judgment is, therefore, reversed and judgment is now entered in favor of the plaintiff on the verdict.