SOUTHERN RY. CO. v. ELDER.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1897.)

No. 400.

1. RAILROADS — OMISSION OF SIGNALS AT CROSSING — FAILURE OF ROAD OVERSEER TO ERECT SIGN.

Under Mill. & V. Code Tenn. § 1298, requiring overseers of public roads to erect a sign at each railroad crossing, and providing that "no engine driver shall be compelled to blow the whistle or ring the bell at any crossing unless it is so designated," the servants in charge of a train are not required to give a warning of any kind of the approach of a train to a crossing not so designated.

2. SAME—PLEADING.

The plaintiff having alleged in her declaration that the road where the accident occurred was a "public road," she cannot, without amending her declaration, be heard to claim that the road was a private one, even if it should be conceded that that is material.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was an action by the widow of Davis Elder to recover damages for the negligent killing of her husband while crossing the track of the Southern Railway Company at a point where the railroad was crossed at right angles by a public road upon which the deceased was traveling. The deceased at the time of the accident was driving in a one-horse vehicle, called a "buggy," upon a road which is described in the declaration as "a public road leading from the town of Cleveland, Tennessee, which crossed at grade the track of the railroad owned and operated by plaintiff in error." The only witnesses to the collision were the driver and fireman upon the engine of the company. They testified that the train was moving at about 40 miles per hour as it approached the crossing, and was within 30 or 40 yards of the crossing when deceased was observed to be driving on the track, and that he had not been sooner seen, though one of them had been on the lookout ahead. They further testified that everything was done to stop the train and warn the deceased which was possible after he was seen. There was a conflict in the evidence as to whether the bell was rung or whistle sounded while approaching this crossing. The deceased was instantly killed, and there was no direct evidence as to whether he had stopped or looked or listened before approaching the crossing. There was evidence, however, that the right of way on both sides of the track was so obstructed by weeds and undergrowth as that one undertaking to cross the road in a buggy could not observe the approach of a train on either side of the crossing until within a few feet of the track. There was a verdict and judgment for the plaintiff below, and this writ of error was sued out by the railroad company for the purpose of reversing that judgment.

Thos. H. Cooke, J. E. Mayfield, Leon Jourolmon, W. L. Welcker, and Henry Hudson, for plaintiff in error.

W. L. Humphrey, C. W. Lester, Wiley S. Gaston, N. Q. Adams, and E. B. Madison, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Section 1298, Mill. & V. Code Tenn., provides as follows:

"(1) The overseers of every public road, crossed by a railroad, shall place at each crossing a sign, marked: 'Look Out for the Cars When You Hear the Whistle or Bell;' and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated. (2) On approaching every crossing, so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing. * * * (4) Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road, the alarm-whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

By sections 1299 and 1300 of the same revision it is provided that every railroad company which fails to observe these precautions shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur, and that no railroad company that observes or causes to be observed these precautions shall be responsible for any damages done to persons or property upon its road. It was admitted that the crossing in question was not designated in the manner prescribed by section 1298, and there was evidence tending to show that the railroad company did not ring a bell or blow a whistle, or give any other warning of approach to

this crossing. After charging the jury with respect to what was designated by the learned trial judge as "statutory negligence" at railroad crossings, he then instructed the jury as follows:

"Now, in this case it is conceded that at this crossing there was no signboard of the kind prescribed by the statute, and, that being so. the company and its engineer, in the express language of the statute, was under no obligation to sound the bell or blow the whistle as prescribed by the statute. * * * I say to you now, and before I leave this part of the case, that this statutory requirement of sounding the bell and blowing the whistle at one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing, has no application to this case."

He then instructed the jury further, as follows:

"Regardless of the statutory requirements, the court is of the opinion, and so instructs you, that it was the duty of the railroad company, if a road used as a public highway by the people in that neighborhood for traveling had been there for such length of time and so used as that the railroad company, through its officers and agents, knew that it was so used, the company was under the duty of giving reasonable notice and of exercising reasonable care at such crossing to prevent accident, irrespective of any statutory requirement. The distinction is that the common law, in the absence of any statute, requires no particular signal to be given, but requires such warning to be given as would be reasonable and prudent in notifying persons who might be crossing of the approach of the train. It might be seen by sounding the bell or blowing the whistle, or either. It might, if the train made a sufficient amount of noise, occur by the motion of the train. Any signal which was reasonable—the giving of which would be reasonable care and caution—would be sufficient to discharge that duty, and a failure to give any warning of any kind reasonably calculated to inform travelers of the approach of the train would render the defendant liable if an accident resulted from such failure."

The charge of the trial judge that, although this crossing was not designated as required by the statute, yet it was the duty of the railroad company to give "reasonable notice and to exercise reasonable care at such crossings to prevent accidents, irrespective of any statutory requirements," cannot be sustained if any effect is to be given to the positive words of the statute, that "no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated." The authority of the state to prescribe rules and regulations concerning the operation of railroads at such crossings is not disputed, and the only question which can arise is whether the legislation enacted was intended to cover the whole subject, and to relieve railroads from the exercise of common-law precautions at crossings where the statutory signboard had not been erected. If the statute had been silent as to the duties of railroads where crossings were not so designated, there would be room to infer that at undesignated crossings it would be the duty of such companies to exercise all the care and prudence required by common law. In the case supposed, it could be well presumed that the common law was not repealed or altered except in the case mentioned in the statute, and that at places so designated no signal or precaution other than those prescribed by the statute would absolve the railroad from responsibility. The peculiarity distinguishing this statute from all others to which attention has been called is that it expressly absolves railroads from blowing the whistle or ringing the bell unless the crossing be designated by the proper signboard. These signals are, beyond controversy, the most

effectual of all known means of giving warning; and to say that while absolved from using the best known and most efficient signals, or using them at the time and place named in the statute, the duty remains of using less known and less usual methods of warning, is to practically annul the statute without securing any adequate protection to the public. But the instruction went further than this. The whole question of what would be "such warning  *  *  *  as would be reasonable and prudent in notifying persons  *  *  *  of the approach of the train" was left to the jury. If, under the circumstances of the particular case, the jury should think that nothing less than the blowing of the whistle or the ringing of the bell, or both, at the distance of one-fourth of a mile from the crossing, and at intervals until crossed, was reasonable care and prudence, it was their perfect right to so find, and return a verdict accordingly. Thus, we would have the situation of the lawmaking power of the state saying that, unless the crossing is designated as required by law, the engine driver shall be under no duty to blow his whistle or ring his bell, while the jury, acting also by virtue of law, would be authorized to say on the same facts that it was negligence not to blow the whistle or ring the bell. Such an anomalous situation is not to be supposed, and the plain language of this statute leaves no room for such a construction. If any doubt could be suggested as to the import of the positive provision of the statute, it must be regarded as settled by the opinion of the Tennessee supreme court in the case of Railroad Co. v. McDonough, 97 Tenn. 255, 37 S. W. 15,—a case which has been decided since the allowance of the writ of error in this case. That was an action for damages sustained by the killing of a cow at a railroad crossing. A jury was waived, and the case submitted to the trial judge, who found generally for the plaintiff. There was no evidence as to whether the crossing was distinguished by a signboard such as required by section 1298, Mill. & V. Code Tenn. The railroad company insisted that it was not bound to ring the bell or sound the whistle on approaching this crossing unless it was first shown that the crossing was marked by the statutory signboard. In support of the judgment it was urged that, where it was shown that the road was a public and much-traveled road, the law would presume that the road overseer had discharged his duty, and maintained the sign which the law required him to erect. To this the court, speaking through Justice McAllister, said:

"We are unable to concur in this contention. The statute provides that the overseer of every public road crossed by a railroad shall place at such crossing a signal marked, 'Look Out for the Cars When You Hear the Whistle or Bell,' and the county court shall appropriate the money to defray the expenses of such signs, and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing unless it is so designated. Mill. & V. Code, § 1298, subsec. 1. It will be observed that the duty of the company to ring its bell or sound its whistle at public crossings is not absolute, but is contingent upon the performance of a separate and distinct duty by an independent public agent. The company is in no default until it is made to appear that the crossing has been designated in the manner required by the statute."

It is true that the judgment in that case was affirmed, but the affirmance was placed upon another ground, there being a general finding in favor of the plaintiff below.

It has been suggested by counsel for defendant in error that the crossing where this collision occurred was not such a crossing as was required to be designated by section 1298, and that, therefore, the common-law duties of the railroad company at crossings other than such as are described in section 1298 have application. This is clearly an afterthought. The declaration described the road as a "public road." Whether it had been laid off by the county authorities as a public road does not appear, and, in view of the averment of the declaration, it was unnecessary. Dedication by the landowner and acceptance and use by the public are sufficient to make it a public road, without any formal action by the county authorities. The declaration having described the road upon which the deceased was traveling as a "public road" precluded the plaintiff from controverting that fact without amending his pleading. The question as to whether the statute has any application to a mere "private road," as distinguished from a "public road," was not involved on this record, and no charge was made or requested upon this aspect of the case. We do not, therefore, regard this question as involved upon this writ of error, or calling for any expression of opinion by this court. Nashville & D. R. R. v. State, 1 Baxt. 58; Gilson v. State, 5 Lea, 163, 164. The neglect of the proper authorities to appoint an overseer, or of the overseer to properly designate the crossing, would not alter its character as a public road. That railroads should be absolved from the common-law duty of giving some reasonable warning of the approach of its trains to undesignated public road crossings may be a public misfortune, but it is one which the public can obviate by causing the proper signs to be erected. The absence of such a sign is notice that extraordinary care should be exercised by a traveler desiring to cross. Altogether different provisions of the statute apply concerning the duty of railroads to persons, animals, or objects which appear on its tracks at crossings or elsewhere. The provisions of the third paragraph of section 1298 cover the latter class of cases, and impose very stringent duties, and an absolute liability for any failure to observe the duties prescribed by that paragraph. The first paragraph of the section deals only with the precautions to be observed on approaching a crossing, and before an object has appeared on the track. There was conflicting evidence as to whether the duties imposed by the third paragraph of the section had been observed, and an unobjectionable charge upon that phase of the evidence. But for the error in the instruction as to the duty of the railroad company upon approaching the crossing in question the judgment must be reversed and the cause remanded, with directions to award a new trial.