L. R. GRAVES *v.* ILLINOIS CENTRAL RAILROAD COMPANY;
EMELIA HENKEL *et al. v.* YAZOO & MISSISSIPPI VALLEY
RAILROAD COMPANY *et al.*;

and

JOSEPH HENKEL *v.* YAZOO & MISSISSIPPI VALLEY RAIL-
ROAD COMPANY *et al.**

(*Jackson.*   April Term, 1912.)

1. **RAILROADS.**   Not required to sound whistle or bell at pub-
lic road crossings not designated by statutory sign.

Under the statute (Shannon's Code, section 1574, subsection 1),
    requiring the overseers of public roads crossed by a railroad
    to erect at every such crossing a sign marked: "Lookout for
    the cars when you hear the whistle or bell," and under the
    statute (in subsection 2) requiring the whistle or bell to be
    sounded at such crossings so designated, and under the statute
    (in subsection 1) dispensing with the sounding of the whistle
    or bell at crossings not so designated), and under the statute
    (in section 1575) providing that every railroad company failing
    to observe these precautions shall be responsible for damages
    resulting from accidents or collisions, and under the statute
    (in section 1576) providing that any railroad company that
    observes such precautions shall not be responsible for such
    damages, there is neither a statutory nor a common law liability,
    against railroad companies, for failure to observe the statutory
    precautions at such crossings not designated as required by
    the statute; for the reason that the statute is not declaratory
    of the common law, but repugnant to it, and because it under-
    takes to prescribe and define the entire duty of railroad com-

*Giving the statutory signals as measure of trainmen's duty at
highway crossing, see note in 15 L. R. A., 426.

Graves v. Railroad.

panies at public crossings as to giving warning of the approach of trains. The crossing is not designated as required by the statute, so as to require railroad companies to sound the whistle or bell at such crossings, where some person other than the overseer of a public road crossed by a railroad marked the place of the crossing by a sign with cross-arms upon it and the inscription "Railroad Crossing," instead of such overseer placing at such crossing a sign marked: "Lookout for the cars when you hear the whistle or bell," as required by statute (Shannon's Code, section 1574, subsection 1). (*Post, pp.* 151-162.)

Code cited and construed: Secs. 1574 (subsec. 1 and 2), 1575, 1576 (S.); secs. 1298 (subsecs. 1 and 2), 1299, 1300 (M. & V.); secs. 1166 (subsecs. 1 and 2), 1167, 1168 (T. & S. and 1858).

Case cited and approved: Railroad v. Elder, 26 C. C. A., 615, 81 Fed., 791.

Cases cited, distinguished, and approved: Railroad v. Yandal, 5 Sneed, 295; Railroad v. St. John, 5 Sneed, 525; Railroad v. Sawyer, 114 Tenn., 84; Railroad v. Finley, 122 Tenn., 127.

2. **STATUTES. Repugnant to common law are not declaratory of it, and must prevail where conflicting with common law.**

A statute cannot be declaratory of the common law in so far as it is repugnant to the common law; and when there is a conflict between the common law and a statute, the provision of the statute must prevail; and when a statute undertakes to regulate an entire subject, its provisions must likewise prevail. (*Post, pp.* 158, 159, 160, 161.)

Cases cited and approved: Moyers v. Brown, 10 Humph., 77; Russell v. Colyar, 4 Heisk., 159; Padgett v. Iron Co., 97 Tenn., 690; State v. Cooper, 120 Tenn., 549.

3. **RAILROADS. Not required to sound whistle or bell at public road crossings, if statutory signals are not erected, or if erected by one not a public road overseer.**

Where some person other than the overseer of a public road crossed by a railroad erected at such crossing a sign with cross-arms on which were the words "Railroad Crossing," such erec-

Graves v. Railroad.

tion is not a sufficient compliance with the statute (Shannon's Code, section 1574, subsection 1) requiring such overseers to place at such crossings a sign reading "Lookout for the cars when you hear the whistle or bell," so as to render a railroad company liable for failure to sound the whistle or bell as required at crossings where the required sign is erected. (*Post, pp.* 152, 153, 162-167.)

Code cited and construed: Sec. 1574, subsec. 1 (S.); sec. 1298, subsec. 1 (M. & V.); sec. 1166, subsec. 1 (T. & S. and 1858).

Cases cited and approved: Hill v. Railroad, 9 Heisk., 823-827; Collins v. Railroad, 9 Heisk., 841-852; Railroad v. McDonough, 97 Tenn., 255-257; Railroad v. Davis, 104 Tenn., 442; Rapid Transit Co. v. Walton, 105 Tenn., 415-420; Railroad v. Elder, 26 C. C. A., 615, 81 Fed., 791.

4. **SAME. Failure to erect required signals at public road crossings relieves railroad company from liability; construction of original statute.**

The statute (Shannon's Code, section 1574, subsection 1), providing that no railroad engine driver shall be compelled to sound the whistle or bell at any public road crossing where the proper signal has not been erected thereat by the overseer of the public road, cannot, by reference to the original statute (Acts 1855-56, ch. 94, sec. 2), be construed as merely relieving such driver from the criminal liability therein imposed and inflicted, because it was manifestly intended also to relieve the railroad companies from liability at such crossings not so designated. (*Post, pp.* 167, 168.)

Code cited and construed: Sec. 1574, subsec. 1 (S.); sec. 1298, subsec. 1 (M. & V.); sec. 1166, subsec. 1 (T. & S. and 1858).

Acts cited and construed: Acts 1855-56, ch. 94, sec. 2.

FROM LAUDERDALE.

Appeal of the Graves case from the Circuit Court of Lauderdale County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—S. J. EVERETT, Circuit Judge.

## FROM SHELBY.

Appeal of the Henkel cases from the Circuit Court of Shelby County (3d Division) to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—A. B. PITTMAN, Circuit Judge.

CRAIG & BULLOCK, for Graves.

BELL, TERRY, ANDERSON & BELL, for Henkels.

C. N. BURCH and W. M. SIMONTON, for Illinois Central Railroad Company.

FITZHUGH & BIGGS and C. N. BURCH, for Yazoo & Mississippi Valley Railroad Company *et al.*

MR. JUSTICE GREEN delivered the opinion of the Court.

These three suits were brought to recover for damages arising from accidents at the crossing of railroad lines and public roads. The first suit involves damages to an automobile and suit case, resulting from a collision with a railroad train. The second suit involves damages for personal injuries alleged to have been sustained by Mrs. Emelia Henkel in a grade crossing accident; and the third suit is brought by Mrs. Henkel's

husband, Joseph Henkel, to recover his damages on account of his wife's injuries.

The declarations in the several cases charge that the accidents resulted by reason of the failure of the railroad companies, through their servants in charge of the engines, to give warning of the approach of the trains before reaching the road crossings. It is averred that there was a failure to comply with statutory precautions or to give any warning of the approach of the trains.

It appears that the crossing in Shelby county, at which the accident occurred on which the Henkel suits are based, is marked by a sign with cross-arms upon it and the inscription "Railroad Crossing." It is not clear from the record whether there was such a sign at the crossing where the accident to the Graves' automobile happened or not; but, for the purposes of this decision, it may be conceded that both of these crossings were marked with a sign such as the one described as appearing in the Henkel cases.

It is admitted that neither of these signs were put up by the road overseer in charge, and it is admitted that neither of these signs bore the legend prescribed in the statute: "Look out for the cars when you hear the whistle or bell."

A motion for peremptory instructions was made by the railroad companies in all the cases, and these several motions were granted, and the suits dismissed. In the court of civil appeals, however, the cases were reversed and remanded for trial.

As we understand the opinion of the court of civil appeals, that court holds that there is a common law duty resting upon every railroad company to give notice of the approach of its trains to a grade crossing, if that crossing be what the court of civil appeals refers to as a dangerous crossing, and that this duty rests upon the railroad company whether such crossing has been marked by the road overseer, as required by the statute, or not. It appears in these cases before us that the view of the railroad tracks from both these crossings was somewhat obscured—in the one case, by a growth of shrubbery or trees; in the other case, by the fact that the railroad track ran through a cut at the crossing. So it was that there was not a clear view of the railroad from the road approaching either crossing, nor was there a clear view of the road from the railroad approaching either crossing.

Our statute regulating the duties and liabilities of railroad companies at grade crossings is contained in Shannon's Code, section 1574, subsecs. 1 and 2, and sections 1575 and 1576. These provisions are as follows:

1574. (1) "The overseers of every public road crossed by a railroad shall place at each crossing a sign marked, 'Look out for the cars when you hear the whistle or bell,' and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated."

(2) "On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be sounded

at the distance of one-fourth of a mile from the cross-ing and at short intervals till the train has passed the crossing."

1575.  "Every railroad company that fails to observe these precautions, or cause them to be observed by its agents or servants, shall be responsible for all damage to persons or property occasioned by or resulting from any accident or collision that may occur."

1576.  "No railroad that observes, or causes to be observed, these precautions, shall be responsible for any damage done to person or property on its road.  The proof that it has observed said precautions shall be upon the company."

There was evidence in these cases tending to show that the engine drivers had not observed the precautions above, but had failed to blow the whistle or ring the bell on approaching these crossings.  Upon a motion for peremptory instructions, the truth of this testimony was, of course, conceded.

The insistence of the railroad companies is that no requirement rests upon them to observe the precautions prescribed by the statute at such crossings, unless the crossings are marked by the road overseer, as prescribed in subsection 1 of section 1574.

We think that this contention for the railroad companies is well made, and it is difficult to see how any other conclusion can be reached, if we give a natural construction and effect to the provisons of the statute quoted.

It is not doubted that the legislature has the right to pass laws regulating the duties and liabilities of railroad companies at grade crossings; such legislation being a valid exercise of the police power of the State. This was determined in *Railroad* v. *Burke,* 6 Cold., 45, and has never since been questioned.

These statutes undertake to define the duties of the railroad company respecting its trains crossing public roads. Certain obligations are imposed by the statute, both upon railroad companies and the public road overseers having in charge public roads crossed by railroad tracks. It is enacted that, if the railroad companies fail to observe the precautions prescribed, they shall be liable for all damages resulting from any accident. It is enacted that, if the railroad companies cause to be observed these precautions, they shall not be responsible for any damage done to person or property.

The language of these statutes is too plain to be mistaken. They provide that every railroad company which fails to observe certain precautions at public road crossings shall be liable if an accident ensues. The precautions required are, that, on approaching every crossing "so distinguished," the whistle or bell of the engine shall be sounded at a distance of one-fourth of a mile and at short intervals till the train has passed the crossing. How distinguished? The answer is found in subsection 1: Distinguished or designated by a sign erected by the road overseer and inscribed "Look out for the cars when you hear the whistle or bell."

On the other hand, the statutes provide that no railroad company shall be liable for damage done to person or property if it observes the precautions prescribed; that is to say, if on approaching every crossing "so distinguished" the whistle or bell is sounded at a distance of one-fourth of a mile and at short intervals till the train has passed the crossing. The requirement is that the precautions shall be observed on approaching crossings "so distinguished," and, as just stated, the meaning of the words "so distinguished" is explained in subsection 1 of section 1574.

The effect of this language is plain. If the crossing is marked as required by the statute, the railroad company, under the statute, is liable for failure to sound the whistle or bell upon approaching said crossing with its trains. If the crossing is not marked as required by the statute, the railroad company is not liable for failure to sound the bell or whistle at said crossing.

A railroad is not liable for its failure to observe statutory precautions at all crossings, but only for its failure to observe such precautions at crossings "so distinguished."

There really cannot be any controversy over the meaning of the language of this statute. It is too simple. We do not understand that the court of civil appeals questions the foregoing construction. That court, however, as stated, was of opinion that, in addition to the duties imposed by the statute upon railroad companies at such crossings, a common law duty rested upon them as well.

It is said that under the common law a duty rests upon every railroad company, at a road crossing where the view is obstructed, or where there is much travel, to give warning of the approach of its trains, and that this duty at common law rests upon such railroad companies, whether the crossing be marked in any way or not. It is doubtless true that this is the common law rule. Authorities are cited to this effect in the opinion of the court of civil appeals, and in the opinion of this court in *Railroad* v. *Sawyer,* 114 Tenn., 84, 86 S. W., 386.

It is insisted that the statute from which the foregoing quotations are taken is but declaratory of the common law, and that it does not alter or vary or change the common law duty resting upon railroads with respect to precautions to be observed when crossing public roads with their trains. For this we are cited to *Railroad* v. *Finley,* 122 Tenn., 127, 118 S. W., 692, 18 Ann. Cas., 1141, and the cases there collected.

Upon examination, it will be found that all these cases refer to the section of the statute regulating the duties of railroad companies with respect to obstructions seen upon the railroad tracks. These duties are prescribed in subsection 4, section 1574, of Shannon's Code, and are as follows:

"Every railroad company shall keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down and every

possible means employed to stop the train and prevent an accident."

It is said in our cases that this section places upon the railroad companies no new duties respecting objects seen upon the track, that all the precautions mentioned in this section were required at common law, and that therefore this section is declaratory of the common law.

It cannot be said, however, that all these sections of the Code which we have quoted, they being taken from chapter 94 of the Acts of 1855-56 and chapter 44 of the Acts of 1857-58, are declaratory of the common law. They are not, nor have ever been supposed to be by this court.

It was said by the court, shortly after the passage of these acts, that the common law liabilities of railroads had generally been merged into these statutory regulations. *Railroad* v. *Yandal,* 5 Sneed, 295; *Railroad Co.* v. *St. John,* 5 Sneed, 525, 73 Am. Dec., 149.

A statute cannot be declaratory of the common law in so far as it is repugnant to the common law. When there is a conflict between the common law and a statute, the provision of the statute must prevail. When a statute undertakes to regulate an entire subject, its provisions likewise must prevail. This statute is repugnant to the common law as respects the duties of railroad companies at public road crossings, and it undertakes to define and prescribe the entire duty of railroads at crossings as to giving warning of the approach of their trains.

The foregoing statement of the law is well established in this State by *Moyers* v. *Brown*, 10 Humph., 77; *Russell* v. *Colyar*, 4 Heisk., 159; *State* v. *Cooper*, 120 Tenn., 549, 113 S. W., 1048, 15 Ann. Cas., 1116; *Padgett* v. *Ducktown, etc., Iron Co.*, 97 Tenn., 690, 37 S. W., 698.

In the case last cited, *Padgett* v. *Ducktown, etc., Iron Co.*, referring to a conflict between the provisions of the Code and statutes formerly existing, this court said:

"Where the Code is clear, by reason of its expressed terms or as a matter of implication, its provisions are the law of the State, without regard to the old statutes which may have been the basis of the provisions in question."

If this statute had simply provided that the road overseer should mark these crossings in a particular way, and that railroad companies should cause the locomotive bell or whistle to be sounded on approaching such marked crossings, then it might be argued that, inasmuch as the statute contained no provision for unmarked crossings, railroad companies would be held to their common law duties with respect to them. Such a result cannot be reached here, however, by reason of the explicit provisions of the Code. No means of warning save by the bell or whistle are in common use by the railroad companies, and it is not suggested that they could give warning of the approach of their trains in any other way. The statutory provision here is couched in positive, negative terms, and is that no engine driver shall be required to sound the bell or whistle on approaching a crossing, unless such crossing is

marked by a sign put up by the road overseer, with the inscription prescribed. There is an absolute repeal of the common law on the subject, and there is no room for speculation about the matter.

This view was taken by the United States circuit court of appeals, and stated thus: .

"If the statute had been silent as to the duties of railroads where crossings were not so designated, there would be room to infer that at undesignated crossings it would be the duty of such companies to exercise all the care and prudence required by the common law. In the case supposed it could be well presumed that the common law was not repealed or altered, except in the case mentioned in the statute, and that at places so designated no signal or precaution other than those prescribed by the statute would absolve the railroad from responsibility. The peculiarity distinguishing this statute from all others to which attention has been called is that it expressly absolves railroads from blowing the whistle or ringing the bell unless the crossing be designated by the proper sign-board." *Southern Railroad Co.* v. *Elder,* 81 Fed., 791, 26 C. C. A., 615.

Inasmuch, therefore, as the statutory provisions just referred to are in conflict with the common law, and inasmuch as this statute undertakes to define the entire duty of railroad companies as to warnings at every grade crossing, it cannot be said that any common law duty remains upon them as to giving warning at such crossings. All their duties in this respect are laid down in the statute and their liability must be determined

altogether by the terms of this statute. The statutory provisions apply to every crossing, and the liability of railroad companies, under the statutes, is the same at every public road crossing, whether such crossing be considered dangerous or otherwise. The lawmakers evidently considered all such crossings dangerous.

It is said, however, that the erection of the signs referred to, with cross-arms on which were displayed the words "Railroad Crossing," was a substantial compliance with the statutory provision as to the erection of signs, and the defendants below should have been required to observe the precautions of sounding the bell or whistle on the approach of their trains to such crossings.

To this we cannot agree. The language of the statute is that the signs shall be erected by the overseer of the public roads, and that upon such signs there shall be an inscription, "Look out for the cars when you hear the whistle or bell."

It is not necessary to go into the reasons of the legislature for the enactment of this law. It is supposed that, at the time of the passage of this statute, railroads being considered as of great advantage and convenience to the community and much desired in every section, the legislature thought proper, by way of encouragement, to fasten upon the several counties through which railroad lines might pass the expense of erecting and maintaining these signs at the various public road crossings, and that, in order the more effectively to secure from the counties compliance with this regulation, rail-

126 Tenn.—11

road companies were meanwhile, in a measure, relieved of liability at crossings, until the county officers erected the signs provided for.

We cannot go further into the motives of the legislature or undertake to review them at length. It suffices to say that the law was passed as stated and remains on our statute books unchanged.

From the very enactment of this statute this court has said that the statute should be literally construed and its every provision given effect. Railroad companies have never been allowed to say, by way of defense to a suit based on their failure to observe these statutory precautions, that the result would not have been different had the precautions been observed; or in other words, they have never been allowed to defend on the idea that their failure to observe such precautions was not the proximate cause of the damage complained of. The court said it would allow no speculation about such matters. The provisions of the statute were mandatory. If they were obeyed, railroads were excused; if they were not obeyed, railroads were liable. The contributory negligence of an injured person has never been allowed to bar his suit, if it was shown that a railroad had failed to observe statutory precautions.

We have many cases illustrating the view this court has always taken of this statute:

"The statute is imperative, and a breach of it gives a right of action, whether the non-observance of it was the proximate cause of the accident or not." *Railroad Co.* v. *Davis,* 104 Tenn., 442, 58 S. W., 296.

Graves v. Railroad.

"The statute does not brook the slightest speculation upon things that are probable or possible, either by the court or by the company's agents, but demands an absolute obedience to its provisions, whether they seem necessary or not." *Hill* v. *Railroad,* 9 Heisk., 823-827.

"The injunctions of the law upon defendant were imperative and peremptory. The consequence of disregarding them, says the court in numerous cases, is absolute and unconditional liability. The statute makes no exceptions and tolerates no excuses." *Collins* v. *Railroad,* 9 Heisk., 841-852.

"It has been said that cases of hardship, or even absurdity, may occur under such construction; but the language is explicit and certain, and capable of being given no other meaning." *Chattanooga Rapid Transit Co.* v. *Walton,* 105 Tenn., 415-420, 58 S. W., 737, and cases there cited.

Illustrations might be multiplied; but, as said in the case of *Hill* v. *Railroad,* supra, upon the construction of these statutes, there has been no variableness or shadow of turning in the adjudicated cases.

Inasmuch as the language of the statute has always been construed literally as against the railroads, and they are held to absolute unconditional liability for a failure to observe these provisions, it must follow that, when a proper case arises, the statute must be construed literally in favor of the railroads, and they must be given absolute and unconditional release from liability when the provisions of the statute require.

When the statute says in as many words that the engine driver shall not be "compelled to blow the whistle or ring the bell at any crossing unless it is so distinguished," we must, pursuing the settled policy of literal adherence to the terms of this statute, relieve the railroads of the performance of those duties which, in the absence of the statute, would have been required of them.

No engine driver is required to sound a whistle or bell on approaching any public crossing, unless at that crossing there has been erected by the road overseer a sign such as referred to in the statute, and unless that sign bears the inscription, "Look out for the cars when you hear the whistle or bell."

It was competent for the legislature to prescribe the exact distance from a city or town, one mile, at which the bell or whistle of an approaching train should be sounded. Shannon's Code, section 1574, subsection 3. This court held that sounding the bell or whistle three-quarters of a mile from the city or town was no compliance with the statute. Railroad v. Davis, 104 Tenn., 442, 58 S. W., 296.

So it was competent for the legislature to prescribe the exact words to be placed upon the crossing signboards, and this court cannot say that the inscription of other words on such signboards is a compliance with the statute.

The legislature directed that such signboards be erected by the "overseers of every public road." This court cannot say that a signboard erected by another,

without authority of law, is such an one as the law compels engine drivers to recognize.

This is not a new question in our courts. In the case of *Railroad* v. *McDonough* there was a suit for the value of a cow killed at the crossing of a railroad and public road. The plaintiff insisted that the bell was not rung or the whistle sounded on the approach of the train to the crossing where the cow was killed. The railroad company insisted that it was not required to ring the bell or sound the whistle, for the reason that the crossing was not shown to have been distinguished by the danger signal required by the statute. There was no proof on this subject by either side, and the question raised on appeal was as to the burden of the proof. The court said:

"It is insisted on behalf of the plaintiff that, the fact being shown that this was an important and much traveled public road, the law would presume that the road overseer, upon whom the duty is devolved by the statute, had discharged his duty. We are unable to concur in this contention. The statute provides that the overseer of every public road, crossed by a railroad, shall place at such crossing a signal marked, 'Look out for the cars when you hear the whistle or bell,' and the county court shall appropriate the money to defray the expenses of said signs, and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing unless it is so designated. M. & V. Code, section 1298, subsection 1. It will be observed that the duty of the company to ring its bell or sound its whis-

tle at public crossings is not absolute, but is contingent upon the performance of a separate and distinct duty by an independent public agent. The company is in no default until it is made to appear that the crossing has been designated in the manner required by the statute. It is supposed that the duty of making this proof is imposed upon the company by section 1300, M. & V., which provides, viz.: 'No railroad company that observes these precautions shall be responsible for any damages done to persons or property on its road. The proof that it has observed such precautions shall be on the company.' It is clear to our minds that this section has application alone to such specific precautions as are laid down in the statute, and which the company is required to observe as a condition of nonliability. It cannot, by any fair construction, relate to such remote duties as are contingent upon the performance of public duties by other officials. Moreover, such requirements would impose upon the company the duty of proving a negative.

"We think it was a part of the plaintiff's case to show affirmatively that the danger signal required by law had been posted at this public crossing." *Railroad* v. *McDonough,* 97 Tenn., 255-257, 37 S. W., 15.

A result precisely similar to the one reached in this case was attained by the circuit court of appeals for the sixth circuit in the case of *Southern Railroad Company* v. *Elder,* supra. In that case Judge Lurton observed:

"That railroads should be absolved from the common-law duty of giving some reasonable warning of the ap-

proach of their trains to undesignated public crossings may be a public misfortune; but it is one which the pub- lic can obviate by causing the proper signs to be erected. The absence of such a sign is a notice that extraordinary care should be exercised by a traveler desiring to cross."

It was urged on the argument that the only effect of the provision that the engine driver should not be compelled to blow the whistle or ring the bell was to relieve him of a criminal prosecution for such failure, provided in section 2 of the Acts of 1855-56, if the crossing was not designated as required by the statute. An examination of the original act does not justify such a conclusion. It is manifest that it was the purpose of the act to relieve the company from liability on account of his failure to blow the whistle or ring the bell if the crossing was unmarked, just as much as it was intended to relieve the engine driver from a criminal prosecution under such circumstances.

While the literal enforcement of the provisions of the statute often seem to result in hardship, and even in absurdity, as this court has formerly said, yet, on the whole, for more than a half century, this court has thought it best, for the public and for the railroads, to exact from all an absolute compliance with these provisions. We are entirely satisfied with the former rulings of the court on this subject, and adhere to them herein. One thing is certain, if the statute is literally enforced against the railroads, it must be literally enforced against the public. It cannot be construed

strictly as against one party, and liberally as against the other. The law must be administered with an even hand.

It results that the court of civil appeals was in error, and the judgment of that court in all the cases must be reversed. The judgments of the circuit court were correct, and will be affirmed, and these suits dismissed.