Southern Ry. Co. *v.* Noah (two cases).

(*Knoxville*, September Term, 1943.)

Opinion filed January 8, 1944.

DONALDSON, MONTGOMERY & KENNERLY of Knoxville, and JOHN P. DAVIS, J. R. KETRON and A. G. SHUMATE, all of Tazewell, for plaintiffs in error.

R. L. POPE and J. D. POPE, both of Knoxville, G. HOWARD NEVILS, of Tazewell, and F. R. WHALIN, of Middlesboro, Ky., for defendant in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Two cases are involved in this appeal and the parties will be designated as they appeared in the Circuit Court.

Plaintiff, Dovie Noah, sued the defendant Railway Company and obtained a judgment in the Circuit Court of Claiborne County for $1400 for personal injuries sustained as a result of the alleged negligence of the defendant. In a second suit her husband, Luther Noah, sued and recovered a judgment for $600 for medical expenses and loss of services. The defendant's motions for new trials were overruled, appeals taken and the Court of Appeals has reversed both judgments and taxed plaintiffs with the costs.

This is the second time that these cases have been tried in the Circuit Court. On the first trial there was a disagreement of the jury and a mistrial entered. It seems that no wayside bill of exceptions was preserved by either party on that trial. There were originally two defendants, the Southern Railway Company and W. E. Harmon. There was, on the first trial, a directed verdict as to Harmon, but as no appeal was taken from such directed verdict, the present case was tried and judgment rendered against the Southern Railway Company only.

The plaintiff was a passenger sitting in the bed of a truck on the left side at the rear. The truck was proceeding along the highway at a speed of about 20 miles an hour, crossing or about to cross the track of defendant Railroad, when a train was seen approaching the crossing, and the plaintiff, believing that a collision was inevitable, started to stand up and while so doing, was thrown from the truck into a ditch beside the railroad. As a result of the fall, she received the injuries for which she has brought suit.

The highway crossing where the injury occurred was a blind crossing. It was undesignated and unmarked. The truck was proceeding slowly and the occupants in the truck did not see the train until the front wheels of

the truck were on the railroad tracks. The train struck neither the truck nor any of its occupants. The plaintiff gives a vivid and succinct account of how she received her injuries: "As we approached the crossing someone said, 'Lord, there's a train,' and I raised up and looked and I couldn't see over this little corner of the bank, the train was coming and the smoke or steam came right over, and when I raised up that threw me over beyond right into a ditch. . . . I was just sitting in the corner like that; it made me face sideways until I raised up and then I was facing the train looking right direct towards it. . . . Question: You were thrown out before you got entirely up? Answer. I went out; *I was raising up and it give a jerk and I went out.*" (Emphasis ours.)

It is undisputed that the crossing where plaintiff's injuries were received was blind, dangerous and much traveled.

The plaintiff's declarations were filed in two counts, the first averring common-law negligence, and the second, the violation of certain statutory regulations. At the opening of this, the second trial, the plaintiffs abandoned their statutory count and the causes were tried, and are here before us, on the common-law count alone.

The facts of this case are peculiar, and of course, our decision must be based on the facts of this particular case. The plaintiff was injured when, according to her own testimony, she was thrown out of the truck when "it gave a jerk" as she was in the act of standing up from a sitting position in the rear of the bed of the truck. The railroad train did not strike the plaintiff nor the truck in which she was riding. She was thrown out about 12 feet before the truck reached the railroad tracks. If the railroad is to be held liable, it must be so held on account of the breach by the railroad of some duty which it owed the

plaintiff, and which was the proximate cause of the injuries which the plaintiff sustained. *White* v. *Nashville, C. & St. L. R. Co.*, 108 Tenn., 739, 70 S. W., 1030.

The statutory count of the declaration has been abandoned, so that this case cannot fall within the scope of those decisions where a recovery is allowed on account of a breach of statutory duty, even though the breach is not causally connected with the injury. We think that it clearly appears that the proximate cause of plaintiff's injuries was the lurch of the truck, and although it does not appear whether that lurch was the result of a negligent operation of the truck by the driver, it does appear that the lurch had no causal connection, proximate or remote, with the operation of the defendant's train.

Both parties have filed petitions for *certiorari,* which were granted. We have heard argument, and the case is before us for disposition. Though several assignments of error have been filed, the parties agree that the sole question for our determination may be fairly stated by the following excerpt from plaintiff's brief: ''No, the basis of this suit is the failure of the Railway Company to sound, properly, its whistle or give any *effective warning as it approached* this dangerous and hazardous crossing, not 2000 feet away, but in such close proximity thereto as to make such warning effective and give timely notice to the public of the approach of this train around the curve, through the cut and onto this hazardous crossing.'' (Emphasis ours.)

Since the statutory count of the declaration and the statutory basis of the suit have been abandoned, it must result that the warning on which plaintiffs insist is a common-law duty.

The rights and liability of the railroad company in this State in regard to accidental injuries to persons

or property as they existed at common law have generally been merged into statutory regulations by which those rights and liabilities are clearly defined. *Mobile & O. R. Co.* v. *Yandal,* 37 Tenn., 294, 295; *East Tennessee & G. R. Co.* v. *St. John,* 37 Tenn., 524, 73 Am. Dec., 149.

The duties of the railroad companies to give warnings at highway crossings, whether they be hazardous and dangerous or not, and whether they be open or blind crossings, are set out and defined in section 2628 et seq. of the Code of Tennessee, and that provision of the Code which is pertinent to the present inquiry is as follows: "The overseers of every public road crossed by a railroad shall place at each crossing a sign, marked as provided by section 2659, below; and the county court shall appropriate money to defray the expenses of said signs; *and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated.*" (Emphasis ours.)

The opinion of *Graves* v. *Illinois Cent. R. Co.,* 126 Tenn., 148, 148 S. W., 239, has construed this section of the Code. The opinion delivered there has become firmly established as a basic part of our State law. There are no exceptions to it in the later opinions of this court. It stands as the judicial interpretation of the duties of the railroad companies at the undesignated and unmarked, though hazardous, crossings as they are defined in this section of the Code, and as was the crossing in this case.

A careful reading of the facts on which the Graves opinion was delivered makes a striking analogy with the facts of the case before us here.

There two cases were consolidated and the opinion delivered covered both of them. One was the case of *Graves* v. *Illinois Cent. R. Co.,* and the other *Henkel* v. *Yazoo & M. V. R. Co.* The facts of the topography of the

crossing are identical with the case before us here; the highway met the railroad at an angle, creating a blind and dangerous crossing, the railroad ran through a cut, and the crossing was obscured by trees and shrubs.

"It appears in these cases before us that the view of the railroad tracks from both these crossings was somewhat obscured—in the one case, by a growth of shrubbery or trees; in the other case, by the fact that the railroad track ran through a cut at the crossing. So it was that there was not a clear view of the railroad from the road approaching either crossing, nor was there a clear view of the road from the railroad approaching either crossing. (126 Tenn., at page 153, 148 S. W., at page 240.)"

■■ Nevertheless, it was held in *Graves* v. *Illinois Cent. R. Co., supra,* that:

"Inasmuch, therefore, as the statutory provisions just referred to are in conflict with the common law, and inasmuch as this statute undertakes to define the *entire duty* of railroad companies *as to warnings* at every grade crossing, it cannot be said that any common-law duty remains upon them *as to giving warning* at such crossings (126 Tenn., at page 160, 148 S. W., at page 242)."

"The statutory provisions apply to every crossing, and the liability of railroad companies, under the statutes, is the same at every public road crossing, whether such crossing be considered dangerous or otherwise (126 Tenn., at page 161, 148 S. W., at page 243)." (Emphasis ours.)

■ The principles announced in the Graves case followed the construction of the statute, as announced not only in earlier opinions of this court but also in those of the Federal Courts which had been called on to construe the same statute. This is evident from the following

language used by Mr. Justice LURTON in the opinion delivered in *Southern R. Co.* v. *Elder*, 6 Cir., 81 F. 791, 795: "That railroads should be absolved from the common-law duty of giving some reasonable warning of the approach of their trains to undesignated public road crossings may be a public misfortune; but it is one which the public can obviate by causing the proper signs to be erected. The absence of such a sign is a notice that extraordinary care should be exercised by a traveler desiring to cross."

It is insisted by plaintiffs that the case of *Stem* v. *Nashville Interurban Ry.*, decided by this court after the *Graves case*, and reported in 142 Tenn., 494, 221 S. W., 192, makes an exception to the *Graves case* and limits its application, and that the case before us now falls within the exception so made. We find no merit in any one of these contentions. We think the case of *Stem* v. *Nashville Interurban Ry.*, *supra*, is clearly distinguishable upon the facts and is in no sense an exception to *Graves* v. *Illinois Cent. R. Co.* In the former case the jury found, and this court sustained the finding, that the high and excessive speed at which the company operated the interurban car at the crossing was the proximate and immediate cause of the plaintiff's injuries. This same judgment would have been sustained even if warning signals, though not required, had been voluntarily given by the railroad, for it was the verdict of the jury that the proximate cause of the accident was not the failure to give warning, but it was the negligent and reckless operation of the street car by the company.

It seems to us that the following quotation in *Stem* v. *Nashville Interurban Ry.*, 142 Tenn., 494, 506, 221 S. W., 192, 195, makes clear the fact that it is in no sense limiting the application of the rule laid down in the Graves

case: "It is conceded that the crossing where the accident occurred was not one designated in accordance with subsection 1 of section 1574 of the statutes, and it necessarily follows that under the decision of *Graves* v. *Illinois Cent. R. Co.*, 126 Tenn., 148, 148 S. W., 239, no liability can be predicated upon the failure of the defendant company to comply with the requirements of subsection 2 of the statute." (These sections of Shannon's Code are identical with section 2628 et seq. of the Code of 1932.)

In the case before us the proof shows affirmatively that the train was not being operated at a high and excessive rate of speed and that the engineer made a quick stop when apprised of the peril of the occupants of the truck.

As we see it, the entire insistence made by plaintiffs' counsel for the liability of the railroad is the failure to give effective warning in approaching the crossing. We think that the case, therefore, is fully covered by the former decision of this court in the case of *Graves* v. *Illinois Cent. R. Co.*, *supra*, and that the assignments of error must be overruled and the opinion of the Court of Appeals affirmed.

The plaintiffs will pay the costs.