SOUTHERN RAILWAY COMPANY

*v.*

J. M. MAPLES

(*Knoxville,* September Term, 1956.)

Opinion filed December 7, 1956.

Simmonds, Bowman & Herndon, Johnson City, for plaintiff in error.

Fred L. Myers, Newport, Hodges & Doughty, Knoxville, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

J. M. Maples brought his suit to recover damages suffered as the result of his truck, loaded with cattle and hogs, being struck by an east-bound freight train of the Southern Railway. The jury returned a verdict for the plaintiff and judgment was entered accordingly.

The defendant appealed and assigned errors in the Court of Appeals. The judgment of the lower court was affirmed. We now have the case on the defendant's petition for *certiorari*.

The plaintiff's declaration contained three counts: (1) that the defendant wrongfully and negligently maintained the crossing in question, the same being defective and in a dangerous condition, in that there were numerous depressions and holes of considerable depth in the surface and bed of the crossing between the rails of the track, making it difficult for motor vehicles to cross in safety. It is alleged that as a result of the aforesaid defective condition of the crossing his truck "stalled" and that the freight train of the defendant, without warning by sounding the bell or whistle, negligently ran into the truck to his damage, etc.; (2) that the defendant violated the statutes of the State requiring certain precautions to be observed, (a) that on approaching a crossing the bell or whistle shall be sounded at a distance of one-fourth of a mile from the crossing at short intervals, (b) that the bell or whistle be sounded at short intervals when approaching or leaving a city or town, (c) that every railroad shall keep the engineer, fireman or some other person on the lookout ahead, etc.; (3) that the defendant violated an ordinance of the City of Newport regulating the speed of trains within its boundaries, the same being copied into and made a part of the declaration.

At the beginning of the trial the defendant moved the court to strike from the declaration the allegation that the defendant wrongfully and negligently maintained the crossing in question, the grounds of said motion being that said crossing was a part of the streets of Newport,

and the duty was upon the city and not upon the railway company to maintain said crossing. This motion was overruled.

At the close of the plaintiff's evidence, and all the evidence, the defendant moved the court for a directed verdict in its favor upon each and every count of the declaration. This motion was overruled.

The action of the trial court in overruling these two motions was assigned as error in the motion for a new trial, and also were made the basis of an assignment of error in the Court of Appeals. These assignments being overruled they are assigned as error in the petition for *certiorari.*

■ The factual issues, as to the alleged negligence of the defendant in the operation of its freight train as it approached this crossing, as well as the alleged contributory negligence of the plaintiff in not looking and listening for the train before going upon the crossing, were decided by the jury against the contentions of the defendant. The Court of Appeals discussed the evidence relating to these issues and held that there was material evidence to support the plaintiff's contention. We are constrained to agree with the findings and conclusions of the court.

The determinative issue in the case is whether it was the duty of the defendant or the City of Newport to maintain the crossing where this accident is shown to have occurred.

The plaintiff testified that he approached the crossing from the north on McMahan Avenue at about 9:00 o'clock p.m. An overhead traffic light controlled traffic at the intersection of McMahan Avenue and Main Street. But

it does not appear that this traffic light controlled the operation of vehicles at this crossing. He further testified that he "satisfied" himself before driving on the crossing that no train was approaching. As to the condition of the crossing he gave the following testimony:

" 'Well, I drove on the track and it was awful rough on the crossing and one particular big hole just as I started to cross the last railroad crossing and my front wheel, left front, wheel, dropped off in this hole and it caused the truck to chug, just like that, it just stopped, so I worked there a little while trying to get it started, to get it to move on, I wasn't thinking about a train and I heard the train blowing and I looked up and there it was right on me, you might say.'

"He estimated the depth of the largest hole in the crossing as four or five inches and the speed of the train at 60 miles per hour and testified that he stayed in the truck on the crossing 'about two minutes' before jumping out."

The foregoing testimony is apparently contradicted by a written statement which the plaintiff signed after the accident. It is urged upon us that it destroys the probative value of the plaintiff's entire testimony. But this issue has been decided adversely to the defendant's contention. We agree with the Court of Appeals that the contradiction was an issue for the jury as to the weight to be given the plaintiff's testimony.

Coming now to what we consider the determinative issue, as heretofore stated; whose duty was it to maintain this crossing, the defendant or the City of Newport?

In approaching the consideration of this question the Court of Appeals (opinion by McAmis, P. J.) says:

"We think plaintiff was entitled to have the case go to the jury unless as insisted defendant was under no duty to maintain the crossing because it is within the corporate limits of Newport. T.C.A. sec. 65-1101 makes it the duty of the railway companies to make and keep in repair crossings on public highways. Defendant insists that the Legislature has pre-empted the field by T.C.A. sec. 65-1102, 3 relieving railway companies of this duty within incorporated towns. Plaintiff insists, on the other hand, that such companies still are under the common law duty of keeping crossing within municipalities in safe repair."

It was the well considered opinion of the learned Court of Appeals that the question was controlled by *Dyer County v. Railroad,* 87 Tenn. 712, 11 S.W. 943; and *City of Chattanooga v. Southern Railway Co.,* 128 Tenn. 399, 161 S.W. 1000, holding that it was the common law duty of railroads to maintain crossings. The defendant relied upon *Graves v. Illinois Central Railroad Co.,* 126 Tenn. 148, 148 S.W. 239; *Steele v. Louisville & N. R. Co.,* 154 Tenn. 208, 285 S.W. 582; and *Southern Railway Co. v. Noah,* 180 Tenn. 532, 176 S.W.2d 826. As pointed out by the Court of Appeals, "These cases dealt with the duty to sound a warning at *specially marked crossings* and it was held that this common law duty of railroads had been merged with the statutory duties." (Emphasis ours). It is furthermore observed, "the statute expressly relieves railroads of all liability where the statutory precautions are observed."

The defendant insists that *Graves v. Illinois Central Railroad Co., supra,* is controlling, wherein it is said [126 Tenn. 148, 148 S.W. 242]:

"If this statute had simply provided that the road

overseer should mark these crossings in a particular way, and that railroad companies should cause the locomotive bell or whistle to be sounded on approaching such marked crossings, then it might be argued that, inasmuch as the statute contained no provision for unmarked crossings, railroad companies would be held to their common-law duties with respect to them. Such a result cannot be reached here, however, by reason of the explicit provisions of the Code. * * * The statutory provision here is * * * that no engine driver shall be required to sound the bell or whistle on approaching a crossing, unless such crossing is marked * * *. There is an absolute repeal of the common law on the subject, and there is no room for speculation about the matter.''

■■ The statute has expressly relieved all railroads from the duty of sounding the alarm by bell or whistle when approaching *"unmarked"* crossings. T.C.A. sec. 65-1208. We think it cannot be doubted but that, under the common law, the duty of repairing crossings devolved upon railroads. Moreover it is settled law in this State that rules of the common law are not repealed by implication. Thus in *Olsen v. Sharpe,* 191 Tenn. 503, 507, 235 S.W.2d 11, 12, it is held:

"Under a familiar rule of statutory construction, Common Law rights will not be abrogated by implication, and such rights will be denied only when the statute expressly so provides'' (citing cases.) '' 'If the statute does not include and cover such a case, it leaves the law as it was before its enactment.' ''

The defendant, however, contends that our statute has by apt language repealed the common law duty of railroads to keep railroad crossings in repair, *where such*

*crossings are within the limits of an incorporated town or city.*

These statutes read as follows:

. "65-1101. *Construction and repair.*—All persons, or corporations, owning or operating a railroad in the state, are required to make and furnish good and sufficient crossings on the public highways crossed by them, and keep same in lawful repair at their own expense."

"65-1102. *Failure to construct and repair—Penalty —Cities and towns excepted.*—A failure to observe and fully comply with the provisions of sec. 65-1101 shall subject the offender to a fine of not less than ten dollars ($10.00) nor more than one hundred dollars ($100); provided, that this section and sec. 65-1101 *shall not apply to crossings within the corporate limits of towns or cities."* (Emphasis ours).

It is the earnest insistence that by reason of the italicized language in these Code .Sections the defendant is relieved of its common law duty to maintain crossings. In other words the common law duty is abrogated and the Legislature so intended.

 The argument in support of the foregoing contention merits our special consideration. We are not persuaded that Section 65-1102 of the Code has the effect of repealing the well recognized rule of the common law. The effect of 65-1102 is to relieve the railroad from any *criminal prosecution,* their obligation to the traveling public to repair not being abrogated.

 While a municipality, such as the City of Newport, is under a duty to the public to maintain its streets in a reasonably safe repair, nevertheless railroads having a right of way upon and across such streets, have a

common law duty to keep in repair so much, and such parts, of these streets as may be under the control of the railroad and necessary to its operation. In these circumstances it has been expressly held that "liability for failure to keep such crossing in repair is not affected by the fact that a right of action may possibly exist for the same defect against a municipality". 44 Am. Jur. (Railroads), Section 498, page 738.

The mere fact that our statute, 65-1102, T.C.A., *supra,* relieves a city or town of criminal liability for not keeping a crossing in proper repair, does not affect its civil liability to any person injured as a proximate result of its negligence.

The assignments of error are overruled, and *certiorari* is denied.