428

ATLANTIC COASTLINE RAILROAD COMPANY and Louisville and Nashville Railroad Company, a union of interests or partnership d/b/a Clinchfield Railroad Company, Appellants,

v.

Marie SMITH et al., Appellees.

No. 13529.

United States Court of Appeals
Sixth Circuit.

Feb. 27, 1959.

Howard E. Wilson and Joe W. Worley, Kingsport, Tenn., Wilson, Worley & Gamble, Kingsport, Tenn., A. K. McIntyre and Harry N. Fortune, Erwin, Tenn., on brief, for appellants.

Herbert R. Silvers, Greeneville, Tenn., Mayne W. Miller, Johnson City, Tenn., Fraker, Silvers & Coleman, Greeneville, Tenn., on brief, for appellees.

Before ALLEN, Chief Judge, and SIMONS and MILLER, Circuit Judges.

ALLEN, Chief Judge.

This appeal arises out of an action brought by plaintiffs [1] against defendants Atlantic Coastline Railroad Company and Louisville and Nashville Railroad Company which jointly manage the Clinchfield Railroad Company, an interstate carrier operating in Tennessee. On July 6, 1957, in Sullivan County, Tennessee, plaintiffs sustained an automobile accident at the approach to an overhead railroad bridge constructed and maintained by defendants.

The case was tried to a jury, which returned a verdict for plaintiffs, finding them guilty of remote contributory negligence but awarding compensation to

1. The parties will be denominated as in the court below.

two parties injured in the accident and to the mother of Bobbie Smith, a minor, for loss of services and hospital and medical expenses.

The railroad tracks are located in a deep cut some 85 feet below the bridge, which furnishes overhead crossing for a public road running roughly north and south to the west of the railroad tracks. A second roadway running roughly east and west joins the north and south road and also crosses the cut via the overhead bridge.

Prior to 1934 the north and south public road was not in existence. At that time defendants and the officials of Sullivan County negotiated a contract in which the parties agreed that an old grade crossing and an underpass should be eliminated; that the county would construct a new public road running parallel with the railroad track and westerly thereof and that defendants would construct and maintain an overhead bridge by which the public road would cross the railroad. Defendants constructed the overhead bridge before the county constructed the public road. The road is around 3 feet wider than the usable portion of the bridge and is a two-lane blacktop highway. It descends abruptly as it approaches the bridge, being 4 feet above the east-west road and 8 feet above the bridge. A qualified highway expert estimated that the steep descent of the road to the bridge is about 10% or 12%. A sharp curve was made from the highway to the left for the crossing of the bridge. A witness familiar with the curve testified that the turn was very sharp, almost 90°. The view of the curve was obscured by bushes on the railroad right of way and the surface laid on the public road by the county in 1955 was covered at the approach to the bridge with loose gravel 6 or 8 inches high in spots.

Plaintiff Bobbie Smith was for most of the evening of July 6, 1957, a passenger in a car owned by John Head, Jr. Together with Mack Barnes plaintiffs had spent considerable time in Johnson City, Tennessee, consuming large quantities of beer. At about midnight they started in Head's car from Johnson City toward Kingsport, intending to take Smith home. Instead Head, who was driving, turned off the main highway and had Smith drive. Smith was 19 years old, had no license, and was an inexperienced driver. He proceeded on the public road west of the railroad track toward the overhead bridge, driving some 35 miles per hour. The accident occurred on the part of the road which was built by the county but situated on the railroad right of way, and on the approach to the bridge.

About 15 or 20 feet from the junction of the public road and the east-west road with the overhead bridge, Barnes told Smith to cut the car to the right, presumably into the east-west road. Instead Smith turned left toward the bridge, ran through the guard rail on the westerly end of the bridge, and the car plunged down the embankment, with resulting injuries to Smith and Head.

It was shown that other cars had failed to make the curve. As to one recent accident at that point defendants had definite notice, for their section employees pulled the car out of the cut. An expert witness, who had for a number of years supervised the county roads of Sullivan County and had built some 200 roads, testified that the approach was unsafe. Defendants before the accident involved here had placed timbers on the easterly end of the bridge. Defendants' maintenance engineer agreed that the bridge would be safer if it were of the same width as the public road; that is, if it were a two-lane bridge instead of a one-lane bridge connecting with a two-lane highway. Considerable evidence was given to the effect that the bridge was not wide enough to accommodate cars running in both directions.

No warnings signs were displayed.

Defendants claimed that they were under no duty to maintain the approaches to the bridge because the county had agreed to perform this obligation. Also defendants urge that the accident was

proximately caused by plaintiffs' negligence.

■ The principal question presented is whether the District Court erred in charging that, under the facts presented, defendants had both a common-law duty and a statutory duty to maintain in safe condition the approaches to the overhead bridge. The accident occurred on the westerly approach. It is urged that the contract between the county and defendants fixed the limits of the obligation of the parties with respect to the overhead crossing. But the record contains no evidence showing an agreement between the county and defendants as to control and maintenance of the approaches. On this point defendants' employee in charge of the records in the office of the engineer and of the general manager testified in effect that nothing in the correspondence introduced in evidence alleged to embody the contract between the county and defendants "marks a dividing line where the railroad will stop and the county begin."

■ Defendants also urge that, since the crossing was made over a pre-existing railroad instead of the bridge being constructed over a pre-existing highway, the Tennessee crossing statute T.C.A. § 65–1101 does not apply.

■ The District Court did not err in charging that defendants operated under a statutory duty to exercise reasonable care in the maintenance of safe approaches to the bridge. As stated above, no division of liability was shown as between the county and defendants. Moreover, it is well established that a common carrier cannot by contract absolve itself of its obligation to the public.

■ The court correctly charged that an obligation rested upon defendants to maintain safe approaches to the bridge under T.C.A. § 65–1101, which reads as follows:

"65–1101. Construction and repair.—All persons, or corporations, owning or operating a railroad in the state, are required to make and furnish good and sufficient crossings on the public highways crossed by them, and keep same in lawful repair at their own expense."

In Tennessee the word "crossing" means the entire structure, including the necessary approaches. Louisville & Nashville Railroad Company v. State, 128 Tenn. 172, 175, 159 S.W. 601.

Defendants insist that the statute does not cover the present situation where the highway crossed a pre-existing railroad. We find no such limitation expressed in the statute. As stated in 3 Elliott on Railroads, 3d Ed., 376 (Section 1570):

"Where the duty [of maintenance of crossings] is imposed by statute the weight of authority is to the effect that it applies to crossings of highways laid out after the construction of the railway, as well as those in existence at the time of its construction."

■ The footnote to this statement cites numerous cases from a number of states and from the United States Supreme Court. In view of the obvious purpose of the legislation, to promote the convenience and safety of the public at a crossing, no such limitation may be read into the Tennessee statute by implication. Southern Railway Company v. Maples, Tenn., 296 S.W.2d 870; Olsen v. Sharpe, 191 Tenn. 503, 507, 235 S.W.2d 11. The time when the public road was constructed is immaterial under this record. Cf. City of Harriman v. Southern Railway Company, 111 Tenn. 538, 549–550, 82 S.W. 213.

■ Under the circumstances set forth the evidence justified the finding of the jury that defendants were guilty of negligence. They were under an obligation to maintain the approaches to the overhead bridge in safe condition. They were charged with knowledge of the steepness of the approach, of the sharp turn, of the existence of the two roads, and of the hazard which would result from turning two-lane traffic into a one-lane bridge. They were charged with knowledge that bushes at the side of the road obscured the vision and they had

notice of at least one similar accident occurring recently on their bridge. However, they arranged no barrier for the westerly end of the bridge. The existence of negligence on the part of defendants was plainly a question of fact and the jury's finding was sustained by the record.

■ As the case was correctly submitted to the jury on the statutory count, since there was clear evidence of failure to observe the statute, there can be no reversal. T.C.A. Section 20–1317; Tennessee Central Railway Company v. Umenstetter, 155 Tenn. 235, 291 S.W. 452; Louisville & Nashville Railroad Company v. Rochelle, 6 Cir., 252 F.2d 730.

■ Defendants claim that plaintiffs were guilty of contributory negligence and therefore are barred from recovery. It is the law in Tennessee that plaintiff's negligence bars recovery when it proximately contributes to an injury, no matter if it be slight. Southern Railroad Co. v. Pugh, 97 Tenn. 624, 634–636, 37 S.W. 555; Bejach v. Colby, 141 Tenn. 686, 214 S.W. 869; Hansard v. Ferguson, 23 Tenn.App. 306, 132 S.W.2d 221. The doctrine of comparative negligence does not obtain in Tennessee. East Tenn. V. & G. Railway Company v. Hull, 88 Tenn. 33, 12 S.W. 419. However, in Tennessee remote contributory negligence does not bar recovery. Anderson v. Carter, 22 Tenn.App. 118, 118 S.W.2d 891; Bejach v. Colby, supra. The latter case held that any negligence on the part of plaintiff contributing directly to the injury will bar an action. It also declared that, where plaintiff's negligence is remotely connected with the cause of the injury, the question to be determined is whether the defendant, exercising ordinary care and skill, might have avoided the injury. If so, plaintiff's remote negligence may not be set up in bar of the action but will be considered only in mitigation.

■ Here the jury indicated to the court that it considered both parties negligent, but that the negligence of defendants was greater. It reported that it had awarded $5,000 to Smith, $2,500 to Marie Smith, and $480 to Head. The judge then charged the jury upon remote contributory negligence, which had not been covered in the former charge. He instructed the jury in substance in accordance with Bejach v. Colby, supra, that if the proximate negligence of defendants concurred with proximate negligence of plaintiff Bobbie Smith there could be no recovery, however slight the negligence of Bobbie Smith. He then charged that, if Smith was guilty only of remote contributory negligence, in other words, negligence which did not constitute the direct and proximate cause of the accident, but was remote in point of time and contributed only remotely to the accident, there could be a recovery but that the damages would be mitigated. Counsel for defendants at the conclusion of the court's instructions stated that the court had charged correctly on remote contributory negligence. The jury in conformity to this charge returned a verdict of $5,000 for Bobbie Smith, $2,500 for Marie Smith, and $480 for John Head, Jr., the same amounts for each plaintiff which the jury had first reported to the court.

While this action was somewhat irregular in view of the fact that remote contributory negligence had not been originally charged, we think the verdict was not reversibly erroneous. The jury in its original allowance evidently considered that Bobbie Smith was guilty only of remote contributory negligence. It mitigated the damages greatly both as to Smith and Head. The size of the awards demonstrates that damages were mitigated in the first announcement of the verdict. Cf. Louisville & Nashville Railroad Company v. Cheatham, 118 Tenn. 160, 189–190, 100 S.W. 902. The final verdict is in no way invalidated by the fact that the jury awarded the same amounts as originally reported.

■ It was not error for the court to refuse defendants' request that the court charge the jury that the approach to a bridge only includes the embankment or other made or prepared struc-

ture necessary to reach the bridge proper from the original level of the land adjacent thereto on which the public road was constructed and maintained. This charge mainly relates to an approach running uphill. The approach here involved was not uphill, it was downhill.

All questions have been considered. No reversible error appearing in the charge of the court, nor in the record, the judgment of the District Court is affirmed.